66

THE STATE OF OHIO, APPELLEE, *v.* ANDERSON, APPELLANT.

[Cite as State v. Anderson (1972), 30 Ohio St. 2d 66.]

(No. 71-650—Decided May 3, 1972.)

Mr. *George C. Smith,* prosecuting attorney, and *Mr. C. William Brownfield, Jr.,* for appellee.

*Messrs. Tyack, Scott & Colley, Mr. Thomas M. Tyack* and *Mr. Otto Beatty, Jr.,* for appellant.

HERBERT, J. The most important issue presented by this case concerns the *voir dire* examination of prospective jurors as to their scruples regarding the infliction of capital punishment upon the defendant. The trial court itself conducted this part of the examination, stating to the veniremen:

"Let me now, then, turn to this matter of your eligibility to serve as a jury in this case, which is the trial of a person charged with a capital offense. No one is eligible to serve on the jury who would not be able to render in a proper case a verdict which the facts and the law would require.

"The indictment in this case charges the defendant with committing murder in the first degree, which under a statute provides that one found guilty of the offense charged is subject to the penalty of death unless mercy is recommended by the jury, and in that case the punishment would be imprisonment for life.

"I repeat, to be eligible to serve as a juror in this case one must be able to render and sign any proper verdict under the law which the facts of this case warrant. That is, one's opinions must not prevent him from rendering any proper verdict which under the alleged charge, if proved, would be a verdict of guilty of murder in the first degree, which would mean punishment by death unless the jury by unanimous vote recommend mercy, which would reduce the punishment to imprisonment for life.

"This is a kind of a test which you and only you can decide. In other words, your eligibility to serve under this test is a matter of your searching your own mind and conscience and judgment. If there is any reason of

religion, predetermined conviction, or fixed opinion which would preclude you from rendering any appropriate verdict in this case, including finding that the defendant was guilty of the capital charge of murder in the first degree, which would mean punishment with death if the facts warranted such a finding.

"Again, I repeat, you are the only one who can decide if your opinions would preclude or prevent you from finding the accused guilty of an offense punishable with death, if you can render any proper verdict in this case after considering all of the evidence and applying the law thereto, that is as far as this test is concerned, your eligibility to become a juror in this case, and the other if your opinions would preclude or prevent you from rendering any proper verdict including one finding the defendant guilty of an offense punishable with death if the facts and the law make that verdict the correct one you would not be eligible to become a juror in this case.

"I am now about to call the roll of those present in the order in which your name is listed on the roll and will ask that you answer clearly as I call your name if you consider yourself eligible under the test I have just explained to you.

"If you can render any appropriate verdict which the facts and the law convince you to be a proper verdict in this case, you will answer, 'I can.'

"If, on the other hand, you feel that your conscience, conviction, or opinion would preclude you from rendering any appropriate verdict, including a verdict of guilty of murder in the first degree without recommendation of mercy, if the facts would so warrant, you will answer, 'I cannot.' "

This was the sole questioning permitted by the court regarding the prospective jurors' feelings about capital punishment, the granting or withholding of mercy in a proper case, whether the panel comprehended the reason for the examination and the full consequences of their answers, and whether the contents of the query were even

understood by the members of the panel. One venireman answered, "I really don't know. It's very improbable that I could recommend the death penalty." The trial judge responded, "I will come back to your name, Mr. Kaiser, as I conclude the roll. I would like at that time to have from your conscience a definite statement of whether you can remain and be called as a juror or you cannot." Thereafter, 27 other prospective jurors' names were called by the court, four of whom answered only with, "I cannot," 23 replying only with, "I can." The court then recalled Mr. Kaiser's name and he stated only, "I cannot."

At the trial court's suggestion, the prosecuting attorney then entered challenges for cause against Mr. Kaiser and the other four veniremen who answered, "I cannot," and, over objection by the defense, these individuals were all excused for cause. The jury was then selected from the persons who remained.

It is appellant's main contention that a jury so selected fails to conform with the due process standard set forth in *Witherspoon* v. *Illinois* (1968), 391 U. S. 510, and that, accordingly, the death sentence imposed upon him cannot be carried out.

This court has already extensively analyzed the *Witherspoon* decision. See *State* v. *Patterson* (1971), 28 Ohio St. 2d 181; *State* v. *Pruett* (1971), 28 Ohio St. 2d 29; *State* v. *Wigglesworth* (1971), 28 Ohio St. 2d 28; *State* v. *Watson* (1971), 28 Ohio St. 2d 15. We have sought to adhere to its mandate that "a sentence of death cannot be carried out if the jury that imposed it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Witherspoon* v. *Illinois, supra,* at page 522. Such decisions as we have made in this regard involved our careful interpretation of the words used by respective courts, litigants and veniremen in asking and answering the question: would you *automatically* vote against the imposition of the death penalty, no matter what the trial might reveal? See *With-*

*erspoon* v. *Illinois, supra,* at page 516; see, also, *Boulden* v. *Holman* (1969), 394 U. S. 478; *Maxwell* v. *Bishop* (1970), 398 U. S. 262.

It is clear to us from the instant record that these veniremen rightfully concluded from the circumstances that they were to give only one or the other of two permissible answers, and that questions relating to the court's query were undesired. The chilling effect which this method of selection had upon the imperative search for an informed and impartial jury to sit in judgment of life or death is obvious.[1] Furthermore, neither we, nor the trial court, nor counsel for the parties below can safely conclude from this record that each of the five challenged veniremen would have been *unwilling* ''to *consider* all of the penalties provided by state law,'' and that each was ''irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.'' *Witherspoon* v. *Illinois, supra,* at page 522, footnote 21.[2]

Compliance with the requirements of *Witherspoon* necessarily includes sufficient latitude in the *voir dire* examination of prospective jurors in a capital case to establish that those who are dismissed for cause upon the basis of their scruples regarding capital punishment would automatically vote against the imposition of a sentence of death no matter what the trial might reveal. We cannot

---

[1] ''The purpose of voir dire examination of jurors is to *determine the real state of their minds* so that a fair and impartial jury can be chosen.'' (Emphasis added.) *Evans* v. *Mason* (1957), 82 Ariz. 40, 46, 308 P. 2d 245.

See, also, *Crawford* v. *Bounds* (C. A. 4, 1968), 395 F. 2d 297; *State* v. *Higgs* (1956), 143 Conn. 138, 120 A. 2d 152; *Lauderdale* v. *State* (1961), 233 Ark. 96, 343 S. W. 2d 422; *Loveland* v. *Nieters* (1952), 79 N. D. 1, 54 N. W. 2d 533; *Pfleeger* v. *Swanson* (1961), 229 Ore. 254, 367 P. 2d 406; *Johnston* v. *State* (1958), 239 Ind. 77, 155 N E. 2d 129.

[2] Equally important is the uncertainty created by the record relative to the feelings of the seated jurors who answered "I can." Would one or more of them have been unwilling to recommend mercy, irrespective of the "facts and circumstances that might emerge in the course of the proceedings"?

so find from the record in the case at bar. See *State* v. *Watson, supra* (28 Ohio St. 2d 15).

Additional grounds exist for our conclusions herein. The Ohio Constitution provides, insofar as here material:

"" * * * In any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed. * * *"" Article I, Section 10, Constitution of Ohio.

As we said in *Lingafelter* v. *Moore* (1917), 95 Ohio St. 384, 387, 117 N. E. 16:

"It is beyond question that the right of trial by jury guaranteed by the Constitution carries with it by necessary implication the right to a trial by a jury composed of unbiased and unprejudiced jurors. This right being guaranteed, all courts are charged with the imperative duty of affording every litigant the opportunity of having his cause tried by an impartial jury." See, also, *Cooper* v. *State* (1865), 16 Ohio St. 328; *Petro* v. *Donner* (1940), 137 Ohio St. 168, 28 N. E. 2d 503; *Peart* v. *Jones* (1953), 159 Ohio St. 137, 111 N. E. 2d 16; *State* v. *Duling* (1970), 21 Ohio St. 2d 13, 254 N. E. 2d 670.

To safeguard this constitutional right, the General Assembly has provided for peremptory challenges and challenges for cause. R. C. 2945.21, 2945.22 and 2945.25.

In *Dowd-Feder* v. *Truesdell* (1936), 130 Ohio St. 530, 533, 200 N. E. 762, we said:

"The right to examine prospective jurors on their *voir dire* is granted to litigants in order to enable them to select a jury composed of men and women qualified and competent to judge and determine, without bias, prejudice or partiality, facts in issue. For the proper exercise of this right, the Legislature has deemed it wise to give to litigants the right of peremptory challenge and challenge for cause. This former right is to be exercised at their discretion and free from any limitation or restriction. Any rule of law which denies a litigant reasonable latitude in the examination of prospective jurors as to their qualifi-

cations in order to enable him to exercise such peremptory challenges judiciously and intelligently, deprives him of a substantial right.

"Reasonable scope must be allowed and latitude given to counsel on the *voir dire* examination \* \* \*."

Later, in *Krupp* v. *Poor* (1970), 24 Ohio St. 2d 123, 125, 265 N. E. 2d 268, this court said:

" 'The purpose of the examination of a prospective juror upon his *voir dire* is to determine whether he has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant.' Paragraph one of the syllabus of *Pavilonis* v. *Valentine* (1929), 120 Ohio St. 154. See, also, paragraph one of the syllabus of *Vega* v. *Evans* (1934), 128 Ohio St. 535, and paragraph one of the syllabus of *Dowd-Feder* v. *Truesdell* (1936), 130 Ohio St. 530. Moreover, the *voir dire* examination serves as the foundation upon which an intelligent exercise of the litigants' right to peremptory challenge may be made. *Pavilonis* v. *Valentine, supra,* and *Dowd-Feder* v. *Truesdell, supra.*

"To achieve that purpose, reasonable latitude must be given to counsel on the *voir dire* examination. \* \* \*" See, also, *Pearson* v. *Gardner Cartage Co.* (1947), 148 Ohio St. 425, 76 N. E. 2d 56.

Whatever may be the practice in other jurisdictions, it is a rule of long standing in Ohio that counsel for the respective litigants be given a reasonable opportunity to personally examine prospective jurors.

The General Assembly has also addressed itself to this important area. R. C. 2945.27 provides:

"The judge of the trial court shall examine the prospective jurors under oath or upon affirmation as to their qualifications to serve as fair and impartial jurors, but he *shall permit reasonable examination of such jurors by* the prosecuting attorney and by *defendant or his counsel.*" (Emphasis added.)[3]

---

[3]In determining whether counsel may examine on a particular subject, proposed Crim. R. 24(A) provides:

"Any person called as a juror for the trial of any cause shall be

The degree of examination that is "reasonable" will vary from case to case depending upon many factors, including whether the trial to be held is criminal or civil, and, if criminal, for what crime.

In the instant case, the defendant was charged with first degree murder under R. C. 2901.01. The jury was entrusted with two distinct responsibilities: First, to determine defendant's guilt or innocence; and second, to determine whether defendant's sentence should be death or imprisonment for life. The jurors were bound by their oath to base their verdict of "not guilty," "guilty of manslaughter," or "guilty," solely upon the law and the evidence, without regard to any personal feelings. However, as in all first degree murder cases in this state, it was left entirely to the jury to determine the extent of punishment in the event of conviction. See *McGautha* v. *California* (1971), 402 U. S. 183, 91 S. Ct. 1454. Under such circumstances, it was unreasonable within the meaning of R. C. 2945.27 for the trial court to prohibit the prosecuting attorney and the defendant or his counsel from asking the prospective jurors *any* questions concerning their scruples regarding capital punishment.

It has not been alleged, argued or shown that this jury was biased with respect to appellant's guilt. We have examined the appellant's other contentions and find no error prejudicial to his interests. Hence, the judgment of guilt will be affirmed. However, as required by the doctrine of *Witherspoon* v. *Illinois, supra,* the penalty of death must be reversed and the cause remanded to the trial court, with instructions to vacate the journal entry sentenc-

---

examined under oath or upon affirmation as to his qualifications. The court may permit the attorney for the defendant, or the defendant if appearing *pro se,* and the attorney for the state to conduct the examination of the prospective jurors or may itself conduct the examination. *In the latter event, the court shall permit the state and defense to supplement the examination by further inquiry.*" (Emphasis added.)

Clearly, permission to conduct *some* "further inquiry" concerning the prospective jurors' scruples regarding capital punishment would be required, the extent thereof being left to the sound discretion of the trial judge.

ing this defendant to death and then to sentence defendant to imprisonment for life as provided for in R. C. 2901.01.

*Judgment accordingly.*

O'NEILL, C. J., STERN, LEACH and BROWN, JJ., concur.

CORRIGAN, J., concurring in judgment. I concur in the judgment of modification of the death sentence in this case, upon the basis of the failure of the trial judge to elicit from each of the excused members of the jury venire an affirmative answer to the question:

Can you unambiguously state that you would automatically vote against the imposition of capital punishment no matter what the trial might reveal?

This is the requirement under the *Witherspoon* doctrine which this court has literally followed in *State* v. *Watson* (1971), 28 Ohio St. 2d 15.

SCHNEIDER, J., concurs in the foregoing concurring opinion.