**The STATE of Ohio, Appellee,**

v.

**MILLER, Appellant.**

[Cite as *State v. Miller* (1997), 122 Ohio App.3d 111.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–97–13.

Decided July 30, 1997.

*Jim Slagle*, Marion County Prosecuting Attorney, and *Renee Potts*, Assistant Prosecuting Attorney, for appellee.

*Daniel E. Shifflet & Co., L.P.A.*, and *Kenneth J. Rexford*, for appellant.

HADLEY, Judge.

Defendant-appellant, Stacey Miller, appeals the judgments of conviction and sentences entered by the Marion County Common Pleas Court following a jury trial finding Miller guilty of aggravated trafficking and trafficking in marijuana, violations of R.C. 2925.03. The court sentenced Miller to a total term of incarceration of six to twenty years and a five-year operator's license suspension for the commission of the offenses, as well as for a guilty finding on a specification for a prior offense of violence, a violation R.C. 2941.143.

In February 1996, the Arizona State University Police Department ("ASUPD") in Tempe, Arizona, received a phone call from an employee at the Mailbox Superstore in Tempe advising that the employee had intercepted a suspicious

package.  After securing a search warrant to inspect the contents of the package, the ASUPD took control of the package and cut two padlocks off a cooler found inside the package to gain access to the contents.  Inside the cooler was approximately twenty pounds of marijuana and numerous dryer sheets used to mask the odor of the marijuana.  The package's destination was an address in Marion, Ohio, where the street value of the marijuana was between $36,000 and $40,000.  The return address on the package was a Columbus, Ohio address.  A detective with the ASUPD contacted Detective Layne of the Marion Police Department to arrange a controlled delivery of the package.  One-half of the contents and one padlock were repackaged and sent to the Marion Police Department for the controlled delivery.  The ASUPD kept one-half of the marijuana and dryer sheets and one padlock for evidence in that jurisdiction.

In March 1996, the Marion Police Department received the remaining contents of the package, repackaged the box, and placed two new padlocks on the cooler. A detective dressed as a United Parcel Service carrier delivered the package to the address identified on the package, Miller's residence.  The package was addressed to a "Stacey Miles."  A wire transmitter device recorded the delivery of the package to Miller's residence.  Miller received and signed for the package as "John Scott."  Miller took the package to the basement, where he opened the box.  He then took the contents of the package, still secured in a cooler by the padlocks, upstairs and set the cooler inside the front door of the house.

Approximately five minutes later the Marion Police Department executed an anticipatory search warrant on the residence to search for the package, the keys to the original padlocks, and any other drug paraphernalia or records.  After a uniformed officer knocked on the front door on the residence, Miller ran out a side door of the home and was apprehended outside in the yard.  Inside the home was Ann Johns, Miller's girlfriend and a resident of the home, and her two young daughters.  After searching the bathroom, the police allowed Johns, who had just finished showering, to return to the bathroom, dress, and leave the home with her daughters.  The police searched Johns, but she was never questioned about her involvement in or possession of the drugs.

The police brought Miller back into the house while they executed the warrant. During the search, officers found the package they had delivered minutes earlier with the padlocks still securing the contents of cooler.  In the master bedroom, officers found two bags of cocaine totaling approximately one ounce in an interior pocket of a jacket and a bag containing three ounces of marijuana in an arm of the jacket.  The jacket was the smaller of two identical jackets hanging in the bedroom.  Miller's driver's license was also found in a pocket of the jacket. Miller is larger than Johns, and the record suggests that the smaller jacket belonged to Johns.

The police also found another small bag of marijuana and hashish in the master bedroom, as well as a phone bill in Miller's name with charges for two collect calls originating from Tempe, Arizona to Miller's residence. Police also found an inoperable triple beam scale in the living room of the home and a tray containing a small amount of marijuana, rolling paper, and marijuana "roaches." The keys to the original padlocks were never found in either the residence or Miller's car.

The police questioned Miller about the contents of the delivered package. Miller claimed that he was expecting delivery of a computer, and thought that when he signed for the package, it contained the computer. He was unable to produce a receipt for the purchase of the computer, and until trial, could not recall where he ordered it.

During the search, Miller's friend, Fred Franklin, arrived at the residence. The police escorted him inside. Franklin was carrying an electronic triple beam scale when he arrived at the house.

Miller was charged with aggravated trafficking and trafficking in marijuana, violations of R.C. 2925.03.[1] The indictment also included a specification for committing a prior offense of violence. Miller filed a motion to suppress, alleging that the affidavit used to secure the anticipatory search warrant did not provide probable cause for the issuance of the warrant, and that the police had violated Miller's *Miranda* rights in obtaining statements from him. The trial court denied that portion of the motion pertaining to probable cause for the issuance of the warrant, but granted Miller's motion to suppress his statements. The trial court based its decision to grant Miller's motion to suppress his statements on the ground that the police had arrested Miller without probable cause. The state filed a motion for reconsideration on the trial court's decision to suppress Miller's statements. The state argued that the issue of probable cause for arrest was not properly before the court. The trial court held an additional suppression hearing on the issue of probable cause for arrest, and found that probable cause existed for Miller's arrest. The trial court subsequently denied Miller's motion to suppress his statements.

On November 13, 1996, Miller discharged his counsel and new counsel entered an appearance in the action. On November 25, 1996, a jury trial commenced, lasting two and one-half days. The jury convicted Miller of both trafficking counts in the indictment. The court sentenced Miller to a total term of incarceration of six to twenty years and a five-year operator's license suspension. This appeal follows, with Miller asserting ten assignments of error.

---

1. Franklin was also indicted on similar charges.

"I. The trial court erred when it failed to grant Appellant's motions for acquittal, and the conviction was against the manifest weight of the evidence.

"II. The trial court erred by denying Appellant's request for a continuance to secure the appearance of a critical defense witness, by denying his motion to reopen his case, and by denying his request for an arrest of the critical defense witness.

"III. The State's prosecution of Appellant for trafficking in cocaine, while deciding not to prosecute or even investigate Ann Johns for her role in the offense, constituted selective prosecution in violation of state and federal due process protections.

"IV. Appellant was denied a fair trial due to prosecutorial misconduct when the prosecutor, during cross-examination of Appellant and of co-defendant Fred Franklin, asked questions which were inflammatory, which contained implicit allegations which were unsupported and unsupportable, and which were patently improper.

"V. The reversal by the trial court of its initial decision to suppress certain statements after permitting the State to reopen the suppression question with additional evidence that was readily available to the State at the time of the initial hearing was improper.

"VI. Appellant received prejudicially ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights, as well as his rights under Section 10, Article I, Ohio Constitution.

"VII. The sentence was improper because both the jury and the trial court failed to return a verdict of guilty on the specification, or, if the trial court is deemed to have returned a verdict of guilty on the specification, then said verdict cannot stand as violative of the Double Jeopardy Clause.

"VIII. The trial court improperly denied Appellant's motion to suppress evidence seized pursuant to search warrant, in violation of Appellant's rights under the Fifth Amendment to the United States Constitution.

"IX. Appellant's sentence was improper as an unconstitutional punishment for Appellant's exercise of his right to due process of law.

"X. The trial court deprived Appellant of an effective voir dire of the potential jurors, in violation of the Sixth Amendment to the United States Constitution and Section 5, Article I, Ohio Constitution. The trial court erred when it failed to grant Appellant's motions for acquittal, and the conviction was against the weight of the evidence."

For the reasons that follow, we remand this cause to the trial court for a new trial on the charges of aggravated trafficking and trafficking in marijuana, and on the specification for the commission of a prior offense of violence.

"[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." *United States v. Hasting* (1983), 461 U.S. 499, 508–509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 106; *State v. Wilson* (1996), 74 Ohio St.3d 381, 398–399, 659 N.E.2d 292, 308–310. The Constitution does guarantee, however, that a criminal defendant receive a fair trial. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684–685; *State v. Williams* (1988), 38 Ohio St.3d 346, 349, 528 N.E.2d 910, 915–916. "[A] conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner* (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623, 637; *State v. DeMarco* (1987), 31 Ohio St.3d 191, 197, 31 OBR 390, 395–396, 509 N.E.2d 1256, 1261–1262.

Of specific concern in the present case is how the state and the trial court addressed the absence of Ann Johns from this proceeding. Johns lived with Miller in the residence where law enforcement found the narcotics constituting the basis of this case. However, at the time of trial Miller and Johns were no longer involved in a relationship or living together. In fact, the record reveals that Miller was arrested for a domestic violence offense and other offenses related to an alleged incident occurring between him and Johns the weekend before trial commenced.

Nevertheless, defense counsel attempted to serve Johns with a subpoena to testify as a defense witness in the present action. The trial court issued a subpoena on November 22, 1996 for Johns to appear before the court. The trial was scheduled to commence on November 25, 1996. The subpoena required Johns to appear on November 27, 1996 at 9:00 a.m. The record indicates that the service copy of the subpoena was personally served on Johns by a special process server on November 22, 1996.[2] Johns failed to appear on November 27, 1996 until later in the morning hours. Because Johns failed to properly appear before the court, the defense rested its case, the state called its rebuttal witnesses, and both parties proceeded with closing arguments. When Johns finally arrived, the jury had been instructed, but had not received the case for its deliberations.[3]

---

2. The trial transcript indicates that defense counsel was unaware that service was complete on November 22, 1996. In the transcript counsel argues that service was not complete until November 27, 1996, but the service copy of the subpoena clearly indicates otherwise.

3. Before the defense rested its case, Miller's counsel requested that the court have Johns arrested as a material witness. When the court denied the motion, counsel requested a continuance to perfect service of the subpoena on Johns. The court also denied this motion.

Miller requested to reopen his case when Johns finally arrived at the court. The trial judge denied this motion, but did permit the defense counsel to proffer Johns's expected testimony to the judge outside the presence of the jury.

When Johns appeared, the court held an *in camera* interview with defense counsel, the state, and Johns's appointed counsel present. Johns indicated that she would plead the Fifth Amendment privilege against self-incrimination to any question asked of her other than her name. The trial judge decided, after hearing the nature of the questions defense counsel intended to ask, that if Johns was going to invoke the Fifth Amendment privilege against self-incrimination there was no need to have her seated as a witness.

The jury never heard from or saw Johns. Both the state and the defense attempted in earlier testimony to prepare the jury for Johns. The defense, during Miller's direct examination, attempted to explain to the jury that Miller and Johns were no longer together because of the high stress of the trial. In response, the state, during Miller's cross-examination, attempted to reveal Miller's recent arrest for domestic violence and other offenses against Johns.[4] Without specifically stating that Miller had been arrested for the alleged offenses, the state asked Miller whether "the reason that you [and Johns] are broken up is because you beat her up." The state followed up by asking whether Johns "left because she was being beaten up." Finally, the state asked whether Miller had an explanation "why the officer would have seen [John's] eyes black and blue." Although defense counsel objected and Miller denied the allegations, the trial court overruled the objection, and did not instruct the jury on the purpose of the testimony.

As stated above, Miller assigned ten errors to the state and the trial court for their conduct in this proceeding. Specifically, assignment of error two alleges that the trial court erred by prohibiting Miller from reopening his case when Johns finally appeared before the court, for denying his motion for a continuance before Johns had appeared, and for not arresting Johns as a material witness prior to her appearance. Miller properly preserved these issues for appeal by requesting that the trial judge make the rulings during the trial but outside the presence of the jury. Assignment of error four addresses the state's and the trial judge's conduct during the state's cross-examination of Miller regarding the questions of the relationship between Johns and Miller.

Considered separately, these assigned errors may, at worst, constitute harmless error.[5] However, considered together, these assigned errors constitute

---

4. Miller was never convicted of these offenses.

5. The case law regarding Miller's second assignment of error holds that "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial

cumulative error, and denied Miller a fair trial. The jury never heard from or saw Ann Johns even though her importance to the trial was self-evident. Johns lived in the residence. She was present in the residence when the controlled delivery occurred. She could corroborate or refute Miller's testimony that he did not know what was in the package, and whether he asked her to call UPS after the package was delivered to determine why they had received it. None of that testimony is facially self-incriminating in nature. Other testimony that could be self-incriminating includes whether she knew that narcotics were present in the home, whether she knew that her jacket contained one ounce of cocaine and a small amount of marijuana, and if she knew who received the collect phone calls from Tempe, Arizona.

The record indicates that she was properly served three days before trial and failed to comply with the service order. Rather than easily remedy her failure to appear by reopening the case, the trial judge refused to allow Miller to examine Johns in the presence of the jury. The jury was left to consider the evidence the state had introduced explaining her absence from the trial. The evidence suggested that Miller inflicted physical violence on her when, in reality, he was

---

judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. *Ungar v. Sarafite* (1964), 376 U.S. 575, 589 [84 S.Ct. 841, 849–850, 11 L.Ed.2d 921, 930–931]; *State v. Bayless* (1976), 48 Ohio St.2d 73, 101 [2 O.O.3d 249, 264–265, 357 N.E.2d 1035, 1053]. * * * As the Supreme Court stated in *Ungar v. Sarafite, supra*, at 589 [84 S.Ct. at 850, 11 L.Ed.2d at 931]: 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'
"* * *
"In evaluating a motion for a continuance, a court should note, *inter alia*: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *State v. Unger* (1981), 67 Ohio St.2d 65, 67–68, 21 O.O.3d 41, 43, 423 N.E.2d 1078, 1080.

The decision whether to reopen a case is within the sound discretion of the trial court. *Columbus v. Grant* (1981), 1 Ohio App.3d 96, 1 OBR 399, 439 N.E.2d 907, paragraph one of the syllabus. The court's decision whether to reopen the case will not be disturbed on appeal absent an abuse of discretion. *Id.*

The law regarding the allegations made in Miller's fourth assignment of error holds that "the conduct of a prosecuting attorney during the trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial." *State v. Gest* (1995), 108 Ohio App.3d 248, 257, 670 N.E.2d 536, 543; *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400.

The state is prohibited from using prior arrests to impeach an accused's testimony on cross-examination. *Wagner v. State* (1926), 115 Ohio St. 136, 137, 152 N.E. 28, 28; *State v. Cole* (1958), 107 Ohio App. 444, 446–447, 8 O.O.2d 427, 428, 155 N.E.2d 507, 508–509. Because we find that cumulated error denied Miller of a fair trial, we will not address whether the state's questions constituted prejudicial error.

never convicted of an offense relating to that alleged incident. The only impression left for the jury to consider was that Johns, who allegedly had an abundance of knowledge regarding the facts of this case, was not a favorable witness for the defense. That impression was created by the state and the trial court, not by Johns or the defense. Her testimony regarding the facts is unknown, but Miller, who the record indicates followed proper procedure, should have had the opportunity to examine the witness in the presence of the jury.

Therefore, we reverse the judgments of conviction against Miller, and order the cause remanded for a new trial on the charges of aggravated trafficking and trafficking in marijuana. Because we are remanding this cause for a new trial, we will also address other alleged errors Miller identified in this appeal, which may be presented in a new trial.

In his third assignment of error, Miller argues that his due process rights were violated because the state practiced selective prosecution by not investigating or arresting Ann Johns. The record does not disclose whether Johns was investigated for any involvement or knowledge of the narcotics found in the residence. Johns was not, however, arrested or convicted for being involved with the narcotics.

The Ohio Supreme Court has adopted the two-prong test of *United States v. Berrios* (C.A.2, 1974), 501 F.2d 1207, 1211, to determine whether the state is practicing selective prosecution. *State v. Flynt* (1980), 63 Ohio St.2d 132, 134, 17 O.O.3d 81, 82, 407 N.E.2d 15, 17. Specifically, the party alleging selective prosecution must demonstrate "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* at 134, 17 O.O.3d at 82, 407 N.E.2d at 17.

Miller contends that he satisfied both requirements of the *Berrios/Flynt* standard. In satisfaction of the first requirement, Miller contends that he and Johns lived in the residence, and both were present during the execution of the anticipatory search warrant. Additionally, Miller contends that the cocaine was discovered in a jacket that belonged to Johns. Proof of the second requirement, Miller argues, was bad faith and gender bias on the part of the state to select Miller, a male, and not Johns, a female, for prosecution.

Based on the foregoing, Miller failed to introduce sufficient evidence to satisfy the requirements of the *Berrios/Flynt* standard. Miller introduced no evidence or even any suggestion that the state does not prosecute other people

similarly situated, but has selected Miller for prosecution. To satisfy this prong, Miller would have to demonstrate other situations where men and women live together, there is an arrest for an offense occurring in the home, and only the males are selected for prosecution when the evidence suggests both residents are culpable. If selective prosecution is occurring in the jurisdiction, Miller would be able to cite other similar situations where men are prosecuted, and women are not charged. Without citation to similar situations in the jurisdiction, Miller's assertion of selective prosecution cannot succeed. Miller's third assignment of error is overruled.

In his fourth assignment of error, Miller contends that the state committed prosecutorial misconduct during his cross-examination, as well as during the cross-examination of defense witness Fred Franklin. The misconduct, Miller argues, was the state's questioning regarding Miller's prior arrests. We have already determined that the cross-examination of Miller was a factor in remanding this cause for a new trial. We have not, however, addressed Miller's contention that the prosecutor committed misconduct during the cross-examination of Franklin.

During the direct examination of Franklin, defense counsel elicited from Franklin that he had known Miller for several years, and that Franklin had never known Miller to deal narcotics. During Franklin's cross-examination the prosecutor asked whether Franklin "knew [Miller] to sell drugs back from Wyandot County." The basis of the cross-examination question was Miller's arrest in Wyandot County for such an offense, of which he was never convicted. Franklin denied knowing that Miller sold drugs in Wyandot County.

Although defense counsel immediately asked to approach the bench after the question was asked, an objection does not appear on the record. Before closing arguments defense counsel moved for a mistrial on the basis that the question unfairly prejudiced Miller. The trial court denied the motion, and did not give a curative instruction to the jury. Because no objection appears on the record, we cannot find error exists unless it constitutes plain error. Crim.R. 52(B).

Evid. R. 405(A) provides that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

■ The fact that Miller was arrested for a drug-related offense could affect his reputation as a person who *does not* deal narcotics. This instance of Miller's misconduct was relevant to the testimony of the character witness, and was admissible to impeach Franklin's statement that Miller had a reputation as a person who does not deal narcotics. Therefore, we cannot find that the prosecu-

tor's conduct constituted plain error, and Miller's fourth assignment of error with respect to the prosecutor's conduct during the cross-examination of Fred Franklin is overruled.

In his seventh assignment of error Miller asserts that the trial court erred by finding Miller guilty on the specification in the indictment. The indictment states that Miller had been previously convicted of an offense of violence, and therefore, was eligible for the imposition of an indefinite term of incarceration pursuant to R.C. 2941.143. Miller contends that he never requested to have the trial judge hear the specification issue and, therefore, the trial judge did not have the jurisdiction to hear the issue. Miller alleges that the specification issue was a jury issue, and that the jury failed to make a determination on the issue.

The state contends that Miller elected to have the trial court decide the specification issue, but is unable to support this allegation in the record. Additionally, the state contends that since Miller admitted during trial that he committed the burglary offense, the offense constituting the basis of the specification was admitted, and that the trial court's finding of guilty was proper.

"If an indictment, count in an indictment, or information that charges a defendant with a third or fourth degree felony contains * * * a specification, the defendant may request that the trial judge, in a case tried by a jury, determine the existence of the specification at the sentencing hearing." R.C. 2941.143. "It is apparent that a request for the trial judge to determine the existence of a specification must be made before trial." [6] *State v. Byrd* (1985), 26 Ohio App.3d 91, 93, 26 OBR 266, 267, 498 N.E.2d 217, 219.

In a jury trial, the determination of whether the specification exists is a jury issue unless the accused elects to have the trial judge make the determination at the sentencing hearing. See R.C. 2941.143 ("the defendant may request [on the record] that the trial judge, in a case tried by a jury, determine the existence of the specification at the sentencing hearing."). One rationale for permitting the trial judge to determine the existence of a specification is that there is an underlying prejudice inherent in permitting the jury to hear evidence of a prior conviction. Guttenberg, Recent Changes in Ohio Sentencing Law: The Questions Left Unanswered (1983), 15 U.Tol.L.Rev. 35, 51. The jury has a "propensity to convict based on the previous convictions instead of the weight of the evidence establishing the elements of the offense. The use of this type of evidence is also restricted because it jeopardizes the presumption of innocence and reduces the prosecution's burden to prove the substantive offense beyond a reasonable doubt. There can be little debate concerning the jury's ability to

---

6. The offenses in the present case were identified as third-degree felonies.

isolate their knowledge of the defendant's prior conviction while considering his guilt on the underlying substantive offense." (Footnotes omitted.). *Id.*

In the present case, the record does not reflect that Miller ever requested that the specification issue be tried separately from the other charges in the indictment. Miller elected to have the jury hear that he had committed a prior offense. Therefore, the specification issue was properly a jury issue. Miller admitted at trial committing the prior offense which provided the basis for the specification. Therefore, if the jury was properly instructed on the specification, it had the jurisdiction and authority to find the existence of the specification. Since the trial court failed to properly instruct the jury, in that the court did not instruct the jury at all on the specification, the jury failed to determine whether the specification was true. The trial judge had no authority to take the issue from the jury without Miller's request, and exert jurisdiction to hear the specification issue during the sentencing hearing.

Miller's seventh assignment of error is well taken to the extent that the trial judge did not have the jurisdiction to determine the existence of the specification. "Any attempt by a court to disregard mandatory statutory requirements of a proceeding regarding jurisdiction renders the attempted proceeding void even if the court believes it is acting upon a request of an accused." *State v. Brock* (1996), 110 Ohio App.3d 656, 666, 675 N.E.2d 18, 24; *State v. Perry* (1967), 10 Ohio St.2d 175, 178–179, 39 O.O.2d 189, 191–192, 226 N.E.2d 104, 106–108. "The judgment having been determined to be void *ab initio* for want of jurisdiction of the trial court, we do not find that appellant was in jeopardy on the offense, and the cause must be remanded to the trial court * * *." *State v. Brock*, 110 Ohio App.3d at 666, 675 N.E.2d at 24.

Miller contends in his ninth assignment of error that his sentence was an unconstitutional punishment for exercising his right to trial. Miller asserts that the state offered a plea bargain of a concurrent sentence of two to ten years for both felonies before the trial court ruled that Miller's statements would be suppressed. However, after the trial court reconsidered the suppression issue and found that Miller's statements would not be suppressed, the state changed its offer to a concurrent sentence of three to ten years for both felonies.

The trial court did not, however, adopt either of these offers when it sentenced Miller to four to ten years' incarceration for aggravated trafficking and two to ten years' incarceration for trafficking in marijuana, the sentences to be served consecutively. At the sentencing hearing, the state recommended a harsher sentence on the trafficking in marijuana charge, but the trial court did not accept the recommendation.

A trial court has broad discretion to impose an indeterminate sentence, and that discretion will not be abused if the sentence falls within the applicable statutory limit. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179, paragraph one of the syllabus. Even if the defendant had entered into a negotiated plea bargain agreement, the trial court was under no obligation to accept that agreement. *State v. Greulich* (1988), 61 Ohio App.3d 22, 26, 572 N.E.2d 132, 134–135; *Akron v. Ragsdale* (1978), 61 Ohio App.2d 107, 15 O.O.3d 107, 399 N.E.2d 119, paragraph one of the syllabus.

In the present case the record suggests that Miller did not enter into a plea agreement, the trial court was not involved in the plea negotiations, and Miller's sentence was within the applicable statutory limit. We fail to comprehend how the trial court's imposition of a statutorily permissible sentence was punishment for Miller deciding to assert his right to trial. Miller's ninth assignment of error is overruled.

In his last assignment of error, Miller contends that the trial court deprived him of an effective voir dire, denying him an impartial jury, by allegedly restricting defense counsel's questioning of prospective jurors. Specifically, Miller alleges that the trial court prohibited defense counsel from inquiring into whether a prospective juror exhibited a bias against his client as a drug abuser.

"The scope of voir dire is within the trial court's discretion and varies depending on the circumstances of each case." *State v. Bedford* (1988), 39 Ohio St.3d 122, 129, 529 N.E.2d 913, 920; *State v. Anderson* (1972), 30 Ohio St.2d 66, 73, 59 O.O.2d 85, 89–90, 282 N.E.2d 568, 572. Limits on voir dire must, however, be reasonable. *State v. Bedford*, 39 Ohio St.3d at 129, 529 N.E.2d at 920–921; *State v. Bridgeman* (1977), 51 Ohio App.2d 105, 109–110, 5 O.O.3d 275, 277–278, 366 N.E.2d 1378, 1382–1383.

In the present case, the trial court permitted defense counsel to ask questions regarding the prospective juror's bias against drug abusers. Defense counsel chose to ignore the court's suggestion to simply ask whether the juror could be fair and impartial knowing that the defendant has used drugs. Rather, defense counsel asked a highly factual question that could not definitively be answered by a prospective juror until evidence in the case had been presented. The trial court did not prohibit further examination of the prospective juror, but merely narrowed the inquiry to general questions of bias.

Reviewing the voir dire as a whole, the trial court acted reasonably and did not abuse its discretion by limiting certain areas of inquiry. Therefore, we find that Miller was not denied a fair and impartial jury. This assigned error is without merit.

In sum, having previously found that cumulative error denied Miller a fair trial, we reverse the judgment of the Marion County Common Pleas Court and remand this cause to the trial court for a new trial. Retrial shall be had on the charges of aggravated trafficking, trafficking in marijuana, and the specification for the commission of a prior offense of violence, as charged in the indictment.

*Judgment reversed*
*and cause remanded.*

EVANS, P.J., concurs.

THOMAS F. BRYANT, J., dissents.

THOMAS F. BRYANT, Judge, dissenting.

I find the errors of which appellant complains to be harmless and the sentencing to be in accordance with the law. I would affirm the judgments of the conviction and the sentences entered by the trial court. For this reason, I respectfully dissent.