### State v. Lorraine
*[Cite as 5 AOA 332]*

Case No. 3838
*Trumbull County, (11th)*
*Decided August 10, 1990*

*Dennis Watkins, Prosecuting Attorney, Peter J. Kontos, Chief Counsel, Criminal Division, Trumbull County Prosecutor's Office, 160 High Street, N.W., 3rd Floor Administration Building, Warren, Ohio 44481, for Plaintiff-Appellee.*

*Randall M. Dana, Ohio Public Defender, Michael W. Gleespen, Assistant State Public Defender, Richard J. Vickers, Assistant State Public Defender, Joann M. Bour-Stokes, Assistant State Public Defender, Ohio Public Defender Commission, 8 East Long Street, 11th Floor, Columbus, Ohio 43266-0587, for Defendant-Appellant.*

MAHONEY, J.

On the morning of May 6, 1986, the bodies of Raymond and Doris Montgomery were found in their Trumbull County home. They had both died from multiple stab wounds. Doris Montgomery was eighty years old; her husband, Raymond, was seventy-seven years old.

That same day appellant, Charles Lorraine, telephoned the Warren Police Department to inquire whether he could obtain a lighter sentence on a pending burglary charge and offered Det. Howard Andrews "some information" in return. Det. Andrews invited appellant to the police station so that they could talk further.

Appellant arrived at the police station approximately ninety minutes after making the call. He was read his rights and signed a waiver thereof. He was not placed under arrest at that time and was free to leave if he felt so inclined. The conversation turned to the Montgomery murders and, although appellant admitted he had heard about them, he denied knowing anything about them.

Following two or three hours of questioning, appellant agreed to a videotaped interview. Once again, appellant agreed to waive his rights to remain silent and to have an attorney present. He was still not under arrest. Appellant was questioned for approximately forty-five minutes before he asked the detectives to turn off the video equipment. Fifteen minutes later he requested that the taping be resumed. Once on camera again, appellant admitted to stabbing the Montgomerys. Following the confession, appellant was formally arrested and read his rights one more time.

The appellant was indicted by a Trumbull County grand jury on two counts of aggravated murder under R.C. 2903.01(A) and two counts under R.C. 2903.01(B). He was also charged with two death penalty specifications and two additional counts of aggravated burglary.

Evidence introduced at trial indicated that on the evening of May 5, 1986, appellant went to the Montgomery home. He lured Raymond Montgomery upstairs under the pretense of

retrieving his necklace. Once upstairs, he stabbed Mr. Montgomery five times. The appellant then went back downstairs where he stabbed Mrs. Montgomery nine times.

At approximately 1:30 a.m. on May 6, 1986, appellant went to a tavern called the Olympic Inn where he met with some friends. Appellant was buying drinks for his friends and explaining how he had just killed two "old people." Appellant and Perry Postlethwaite departed the Olympic Inn at approximately 2:30 a.m. and eventually ended up at Victor Peterman's home. Peterman was another friend of the appellant. Appellant again bragged about killing two "old people." Appellant and Postlethwaite borrowed a hammer from Peterman so that they could break into other homes to obtain more money.

The pair left the Peterman home and broke into a house up the street where they stole $40 and the car from the driveway. They then proceeded back to the Montgomery home, from which they stole money, jewelry, and a gun. Appellant and Postlethwaite then drove the stolen car to a Denny's restaurant for breakfast.

The jury found the appellant guilty on Counts 1 and 2 at the guilt/innocence phase of the trial, and he was sentenced to death following the mitigation phase. In addition, appellant was sentenced to ten to twenty-five years on the aggravated burglary charges.

Appellant timely filed a notice of appeal from his conviction, seeking reversal of his death sentence and/or conviction and remand to the trial court for a new sentencing hearing and/or a new trial. Appellant now raises the following assignments of error.

## ASSIGNMENT NO. 1
"THE TRIAL COURT'S REFUSAL TO ALLOW THE JURY TO CONSIDER MERCY IN THEIR SENTENCING DECISION PREJUDICED APPELLANT."

Appellant's counsel attempted to plead for mercy on behalf of the appellant in the mitigation phase. The trial court sustained the objection of the state and instructed the jury to disregard the plea for mercy. In addition, the trial court refused to instruct the jury that they could consider mercy in their sentencing decision.

Appellant argues that the trial court's refusal to allow pleas of mercy violated his constitutional right to due process, effective assistance of counsel, equal protection, fair trial and right against cruel and unusual punishment.

In *State v. Poindexter* (1988), 36 Ohio St. 3d 1, the Ohio Supreme Court held that issues which have previously been argued and decided in capital cases may be summarily disposed of in all subsequent capital cases. Therefore, appellant's argument may be summarily dismissed as having been considered and rejected by the Ohio Supreme Court in *State v. Jenkins* (1984), 15 Ohio St. 3d 164, 178; *State v. DePew* (1988), 38 Ohio St. 3d 275, 290; *State v. Steffen* (1987), 31 Ohio St. 3d 111, 125; *State v. Bradley* (1989), 42 Ohio St. 3d 136, 147. Thus, appellant's first assignment of error is not well taken.

## ASSIGNMENT NO. 2
"THE PROSECUTOR'S DIRECT REFERENCES TO APPELLANT'S FAILURE TO TESTIFY PREJUDICED APPELLANT."

Appellant argues that on several occasions during the sentencing phase the prosecutor made comments in front of the jury about appellant's failure to testify on certain issues in violation of appellant's Fifth Amendment privilege to remain silent.

The prosecutor's comments resulted from the following questions placed to a defense witness:

"***

"Q. When you confronted Chuck about the tracks in his arms, how did he react? The four days before this all occurred, how did he react when you confronted him?

"A. He said -- he didn't really -- he just acted like nothing ever happened.

"Q. What did he say to you?

"MR. WATKINS: *Your Honor, I'm going to object. It's hearsay. Let the Defendant testify, Your Honor.*

"THE COURT: Overruled.

"Q. You can answer the question.

"A. Well, I have been told --

"THE COURT: Objection sustained.

"***" (Emphasis added.)

No curative instruction was requested or delivered by the trial court.

The prosecutor's objection of hearsay and comment about the appellant not testifying was improper and unnecessary. Such practice is looked upon with great disfavor and is neither encouraged nor applauded by this court. However, reviewing the evidence on the whole, the comment was of minimal prejudice and constitutes harmless error.

Likewise, the prosecutor's closing argument during the sentencing phase regarding the credibility of appellant's unsworn statement to the jury is not grounds for reversing appellant's sentence or conviction. The prosecutor argued:

"***

"MR. WATKINS: \*\*\* Our 23 witnesses testified under oath. They had 10 witnesses that testified under oath, and do you think it's important as to the effect of the wife's pregnancy, the unemployment, his problems with his upbringing, isn't it important for you to know what he had to say about that --

"MR. GLEESPEN: Objection, Your Honor.

"THE COURT: Overruled.

"MR. WATKINS: Did he get up and give a sworn statement to you?

"MR. GLEESPEN: Objection.

"MR. WATKINS: Subject to cross examination?

"THE COURT: Overruled.

"MR. WATKINS: No. What was his statement to this Jury? Did he get up on this witness stand like those other witnesses? He says I'm sorry, I wish it didn't happen. Did you see his demeanor? Do you believe that he was afraid? Was there any evidence in this case that he has ever been afraid? Do you believe that he was sorry? That is what this case is about; the evidence. \*\*\*"

The prosecutor's comment that appellant's statement was not made under oath is directed at its credibility. This has been held to be proper argument by the Supreme Court in *State v. Mapes* (1985), 19 Ohio St. 3d 108, 116; *State v. Jenkins, supra,* at 217; *State v. Bedford* (1988), 39 Ohio St. 3d 122, 125. The Supreme Court placed a limitation on this type of argument in *State v. DePew, supra,* at 285, stating:

"\*\*\* notwithstanding our previous pronouncements in *State v. Mapes* (1985), 19 Ohio St. 3d 108, 116, 19 OBR 318, 324-325, 484 N.E. 2d 140, 147, we now hold that where the defendant chooses to make an unsworn statement in the penalty stage of a capital trial, the prosecution may comment that the defendant's statement has not been made under oath or affirmation, but such comment must be limited to reminding the jury that the defendant's statement was not made under oath, in contrast to the testimony of all other witnesses. While the remarks made herein surely exceed the proper scope of comment set forth today, we find that such remarks are harmless error in light of the overwhelming weight of the aggravating circumstances in this case relative to the factors offered in mitigation, as discussed *infra.*

"\*\*\*"

The prosecutor's remarks in the case *sub judice* fall within the limitation and constitute proper argument. However, assuming arguendo that they exceed the scope of the limitation, they would constitute harmless error.

Appellant's second assignment of error is without merit.

### ASSIGNMENT NO. 3
### "THE STATE'S REFUSAL TO DISCLOSE THE IDENTITIES OF THE REBUTTAL WITNESSES IT ANTICIPATED USING AT TRIAL PREJUDICED APPELLANT."

Appellant argues that the state violated Crim. R. 16(B)(1)(e) as well as his constitutional rights to due process, equal protection, fair trial, effective assistance of counsel, and against cruel and unusual punishment. Appellant contends that, although the state complied with his discovery request for the most part, it failed to disclose the names of the rebuttal witnesses it expected to call during the mitigation phase. Appellant claims that the defense was first informed of the rebuttal witnesses when they were called to the stand.

The state argues that it did not know or anticipate who it was going to call on rebuttal until the appellant put on his witnesses, which the state believed gave false testimony.

The state called four rebuttal witnesses, one of whom was a psychiatrist who testified as an expert witness. Although defense counsel objected to all of the rebuttal witnesses as a violation of the discovery rules, the defense only requested a continuance to prepare for the cross-examination of the doctor, not for the other three witnesses. A one-day continuance was granted by the trial court.

Crim. R. 16(B)(1)(e) provides in relevant part:

"\*\*\* Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, together with any record of prior felony convictions of any such witness, which record is within the knowledge of the prosecuting attorney. \*\*\*"

In *State v. Howard* (1978), 56 Ohio St. 2d 328, 333, the Supreme Court interpreted this rule and held that:

"\*\*\* The philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial. The state should furnish upon a proper demand the names of all witnesses it reasonably anticipates it is likely to call, whether in its case-in-chief or in rebuttal. But as the dissent pointed out, Crim. R. 16(E) (3) sets forth the procedure to be followed and the sanctions, if any, to be imposed when there is a failure to comply. \*\*\*"

Thus, the names of the rebuttal witnesses were properly discoverable if the state reasonably anticipated calling them. Although there is evidence that these witnesses had been contacted prior to trial and told that possibly they may be called to testify, the state argues that it did not anticipate calling them until the defense presented its mitigation witnesses.

The state's argument is unpersuasive. If we were to accept the state's argument, they would never have to disclose the names of rebuttal witnesses. The evidence in the record clearly indicates the state anticipated the possibility of calling these witnesses on rebuttal when it contacted the potential witnesses to inform them of such possibility. The state's failure to provide the defense with the names of these potential rebuttal witnesses is considered to be a poor practice which is greatly disapproved by this court.

However, if the state had not reasonably anticipated these witnesses, as it claims, then it had no duty to disclose the names under Crim. R. 16(B)(1)(e). If the state did anticipate calling the rebuttal witnesses, as the record suggests, then, by not disclosing the names, it has failed to comply with the rule.

Assuming that the state violated the rule, Crim. R. 16(E) (3) sets out the sanctions for noncompliance with the rule. It states:

"*Failure to Comply.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

Clearly, this rule gives the trial court discretion to determine what sanction to apply for nondisclosure. Thus, the issue before us is whether the trial court abused its discretion. See, *State v. Parson* (1983), 6 Ohio St. 3d 442.

In *Lakewood v. Papadelis* (1987), 32 Ohio St. 3d 1, the Supreme Court reversed the judgment where the trial court excluded the testimony of defense witnesses as a sanction pursuant to Crim. R. 16(E) (3). In addressing the discretion of the trial court to impose sanctions under the rule, the Supreme Court held at page 5:

"***

"We adopt the rationale *** that a trial court must inquire into the circumstances surrounding a violation of Crim. R. 16 prior to imposing sanctions pursuant to Crim. R. 16(E)(3). Factors to be considered by the trial court include the extent to which the prosecution will be surprised or prejudiced by the witness testimony, the impact of witness preclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions.

"***

"*** We hold that a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery.

"***"

In the present case, the trial court inquired into the circumstances of the alleged discovery rule violation and imposed the least severe sanction -- a continuance.

Appellant has not demonstrated that the trial court abused its discretion and, therefore, his third assignment of error must fail.

### ASSIGNMENT NO. 4
### "THE REFUSAL OF THE STATE TO DISCLOSE ITS PLEA BARGAIN WITH THE PRINCIPAL CO-DEFENDANT PREJUDICED APPELLANT."

Appellant argues that the state entered into a clandestine deal with codefendant's attorney in exchange for codefendant's favorable testimony and that the state refused to disclose the extent of this plea agreement during appellant's pretrial discovery request for impeachment information. Appellant argues that the state's refusal to disclose the plea bargain deal and its insulation of the codefendant denied appellant due process, a fair trial, and effective assistance of counsel, as well as other constitutional rights.

The state emphasizes that the codefendant, Perry Postlethwaite, was not charged with aggravated murder but with charges which occurred after the murder, two counts of aggravated burglary and one count of obstruction of justice. Later he was charged with an unrelated count of aggravated burglary. The state contends that the plea agreement with the codefendant was that two charges would be dropped if he pled guilty to the other two. The state maintains that there was no deal to exchange testimony for special consideration.

Upon defense counsel placing his objection on the record, the state tried to clarify any misunderstandings on redirect:

"***

"Q. Perry, do you recall ever being charged with obstruction of justice?

"A. Yes.

"Q. Do you recall whether or not the State dismissed that charge?

"A. Yes.

"Q. Do you recall being charged after May 6th with a crime in Cortland, Ohio?

"A. Yes.

"Q. With a house burglary?

"A. Yes.

"Q. Do you recall whether that charge was dismissed?

"A. Yes.

"Q. Did anyone, anyone ever tell you anything about a favorable recommendation in exchange for cooperation?

"A. No.

"Q. Not your lawyer?

"A. No.

"Q. Did I tell you if you testified truthfully and cooperated, a recommendation may be made to the Judge regarding your sentence?

"A. Yeah.

"Q. Did I tell you what that recommendation was going to be?

"A. Recommendation from the Warren Police Department.

"Q. Did I tell you in terms of years what that recommendation was going to be?

"A. I don't understand.

"Q. Did I tell you what the sentence was going to be?

"A. No.

"Q. Did you ask me what it was going to be?

"A. Yes.

"Q. Tell the Jury and the Judge what I said.

"A. You said you couldn't determine that; you had no idea.

"***"

On recross-examination the codefendant testified as follows:

"***

"A. Perry, did you ever talk to your attorney about a deal in this case?

"A. Yes.

"Q. In that discussion did your attorney tell you what factors or the deal might be?

"A. He just told me if I went to Court and pleaded guilty to two burglaries, that I would have two charges dropped.

"Q. That was all the discussion?

"A. Yes.

"***"

Co-defendant admitted on redirect that the state told him, if he cooperated and testified truthfully, that a recommendation from the Warren Police Department would be made; however, the prosecutor could not determine what the sentence would be. Defense counsel's attempt to impeach him was unsuccessful. Appellant was not prejudiced.

Appellant's fourth assignment of error is not well taken.

### ASSIGNMENT NO. 5
"THE APPELLANT WAS PREJUDICED BY ARGUMENTS AND EVIDENCE REGARDING THE SYMPATHETIC CHARACTER AND PERSONAL CIRCUMSTANCES OF THE VICTIMS AND THEIR FAMILY."

The appellant filed a pretrial motion asking that the state be prohibited from introducing evidence of the victims' characters or sympathetic personal circumstances in violation of the rules of evidence. The state replied that it would try the case pursuant to the rules of evidence, and the court stated that it intended to enforce Evid. R. 404(A)(2).

Appellant now argues that the state introduced evidence of facts concerning the character and personal circumstances of the victims which created sympathy for the victims and animosity for the appellant.

Character facts that the appellant complains the state brought out to the jury are age, marital status, sex, race, height, weight, physical condition, the fact that one victim was discovered nude, and evidence demonstrating the weakness or poor physical condition of the victims.

Appellant argues that under Evid. R. 404(A)(2) evidence of such character facts are prejudicial and, therefore, not admissible at trial. The record reflects that appellant did not object at trial when witnesses testified as to the age, physical condition, et cetera, of the victims.

The state maintains that the information about the victims' age, sex, race, et cetera, was relevant, probative and admissible under Evid. R. 402. Appellant has failed to object or demonstrate that any relevant evidence should be excluded on the grounds of prejudice as provided by Evid. R. 403(A).

Evid. R. 404 applies to character evidence used to prove conduct or that the person acted in conformity with his character or trait. The character facts in this case were not used to prove

conduct or that the victims acted in conformity with any trait, but, instead, these facts came out in establishing identity or conditions and methods under which the victims were discovered.

The appellant cites *Booth v. Maryland* (1987), 482 U.S. 496, 96 L.Ed. 2d 440, for the proposition that evidence of a victim's character in a capital case is prejudicial and improper.

The appellant mischaracterizes the holding of the *Booth* decision. The actual holding of *Booth* is that the introduction of the victim impact statement at the sentencing phase of a capital murder trial violates the Eighth Amendment and is unconstitutional.

In the case *sub judice* no victim impact statement was introduced into evidence which could prejudice the jury into imposing the death penalty on the basis of bias or sympathy in an arbitrary manner. Furthermore, the trial court instructed the jury in both the guilt and sentencing phases to decide the case upon the evidence and not on bias, sympathy and emotion.

There is no evidence that the jury disregarded the court's instructions, nor has appellant proved that the jury decided the case on anything other than the evidence. Therefore, appellant's fifth assignment is without merit.

### ASSIGNMENT NO. 6
### "REPEATED ADMISSION OF NONSTATUTORY AGGRAVATING CIRCUMSTANCES BY THE STATE AND THEIR USE IN ARGUMENT FOR THE DEATH SENTENCE PREJUDICED APPELLANT."

Appellant argues that the admission of nonstatutory aggravating circumstances was in violation of R.C. 2929.04(A), that it tainted the jury's sentencing deliberations, and that it prejudiced him.

The jury recommended the death sentence, and the trial court filed a separate opinion, pursuant to R.C. 2929.03(F), in which it set forth the aggravating circumstances and mitigating factors and its findings that the aggravating circumstances outweigh the mitigating factors.

The Supreme Court has held that a trial judge may cite nonstatutory factors and:

"*** may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors. ***" *State v. Stumpf* (1987), 32 Ohio St. 3d 95, 99-100. See, also, *State v. Jester* (1987), 32 Ohio St. 3d 147, 153; *State v. Bradley, supra.* (1989), 42 Ohio St. 3d 136.

Furthermore, this independent review by the court of appeals cures any error the trial court may have made in weighing the aggravating circumstances against the mitigating factors. *State v. Holloway* (1988), 38 Ohio St. 3d 239, 242; *State v. Bradley, supra.* Appellant's sixth assignment of error is without merit.

### ASSIGNMENT NO. 7
### "APPELLANT WAS PREJUDICED BY ADMISSION OF PRIOR UNRELATED ACTS OF CHARGED AND UNCHARGED MISCONDUCT."

Appellant argues that the trial court admitted evidence of prior alleged acts of charged or uncharged misconduct unrelated to the crime charged. Appellant specifically objects to the following evidence and references: to preying on the elderly, stealing automobiles, stabbing an elderly woman, shooting a handgun aimlessly in a populated area, committing an uncharged attempted breaking and entering on the night of the crime, being under sentence for breaking and entering at the time the crimes were committed, repeatedly stealing from the deceased victims prior to the commission of the charges, and having a juvenile record.

Appellant argues that this evidence was inadmissible pursuant to Evid. R. 404(B) and R.C. 2945.59. He claims that, by admitting this evidence, the trial court denied him his rights to due process, fair trial, and against cruel and unusual punishment.

R.C. 2945.59 states:

"*** In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Evid. R. 404(B), "Other Crimes, Wrongs or Acts," provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportu-

nity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

R.C. 2945.59 is to be strictly construed against the state and conservatively applied by a trial court. *State v. DeMarco* (1987), 31 Ohio St. 3d 191. Evidence of other acts of a defendant is admissible only when it tends to show one of the matters enumerated in R.C. 2945.59 and when it is relevant to prove the defendant's guilt of the offense in question. *State v. Burson* (1974), 38 Ohio St. 2d 157; *DeMarco, supra,* at paragraph one of the syllabus. See, also, *State v. Hill* (Nov. 27, 1987), Trumbull App. Nos. 3720/3745, unreported.

The state argues that the attempted breaking and entering into another house in the neighborhood is evidence of appellant's plan, system, and lack of accident; and it is also relevant to establish appellant's whereabouts the night of the homicides. Likewise, the state argues that the testimony about shooting a gun in a populated area is probative of the fact that appellant was firing a gun which he was accused of stealing. The state contends that these events are "closely intertwined" with the breaking into the victims' household and are evidence of motive, scheme, plan, and system.

Evidence pertaining to the victimization of elderly people, the state argues, shows scheme and plan. In addition, appellant's own witness testified of appellant's bragging about committing crimes against an elderly woman. The state maintains that the admission of these "other acts" was proper to show motive, scheme, plan, system, intent and identity of the appellant.

Moreover, the record indicates that appellant's own expert, Dr. Jackson, testified about appellant's history of prior criminal convictions and delinquency adjudications. Appellant elicited and introduced this testimony and cannot now cry foul and prejudice.

Assuming that there was error in admitting some of this evidence, it was harmless error. Thus, appellant's seventh assignment is not well taken.

### ASSIGNMENT NO. 8
### "THE UNMISTAKABLE PATTERN OF SUBSTANTIAL AND EXTENSIVE MISCONDUCT BY THE PROSECUTOR PREJUDICED APPELLANT."

Appellant broadly argues that the prosecutor engaged in a substantial pattern of misconduct throughout voir dire and trial which prejudiced appellant and denied him his constitutional rights. Specifically, appellant contends that the

state attempted to inflame the community sentiments of the jury, referred to facts not in evidence, made inflammatory misstatements of evidence, repeatedly reminded the jury that appellant was poor and represented by the public defender, referred to other acts of charged and uncharged misconduct, and refused to reveal a "deal" with a codefendant for favorable testimony.

The two latter allegations have been addressed in assignments of error four and seven, and that discussion will not be repeated again here.

The prosecutor's remarks of which the appellant complains were made during either the voir dire stage or mitigation phase of the trial. Appellant complains that the prosecutor inflamed the community sentiment of the jurors by remarking that the state represented the victims, who are entitled to a fair trial; that the state represented the jurors and the community; and that defense counsel was not from the community. The prosecutor further told the jurors that they had a duty to protect the community and its rights and set the standards of justice in the community.

The Supreme Court has held that generally a prosecutor is allowed a certain degree of latitude during closing argument. *State v. Liberatore* (1982), 69 Ohio St. 2d 583, 589. In *State v. Smith* (1984), 14 Ohio St. 3d 13, 14, the Court pronounced that "[t]he test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." Thus, the misconduct of a prosecutor during trial is not reversible error unless it deprives the appellant of a fair trial. *State v. Maurer* (1984), 15 Ohio St. 3d 239, 266.

Although a prosecutor cannot call on the jury to convict in response to public demand, the prosecutor's statements must be reviewed as a whole. *State v. Davis* (1978), 60 Ohio App. 2d 355, 361-362; *State v. Burgun* (1978), 56 Ohio St. 2d 354, 366. Reviewing the prosecutor's remarks on the whole, it is clear that the state did not urge the jury to disregard the evidence and base the conviction on community sentiment. In short, the remarks did not deprive appellant of a fair trial; thus, any error is harmless error. Likewise, the remarks made on voir dire were not prejudicial; and the appellant could have challenged and removed the jurors, as the state points out.

Appellant argues that the prosecution's reference to appellant's poverty prejudiced him.

This argument is totally unpersuasive. Appellant failed to object at trial to these alleged references made by the prosecution. Furthermore, appellant's own witnesses testified to his family's financial position. Appellant's father testified that appellant could not find work, and appellant's brother testified that appellant used his welfare money to buy drugs.

Appellant further argues that the state referred to physical evidence as stolen property and made inflammatory arguments that appellant was a "psychopath" who would kill again. Appellant claims that these were facts not in evidence and were, therefore, improper and prejudicial. However, the record indicates that the state's expert witness testified to appellant's personality disorder. Although the doctor did not use the word "psychopath," it was a fair characterization of his testimony.

On the whole, these alleged remarks did not deprive appellant of a fair trial and, therefore, the eighth assignment of error is without merit.

### ASSIGNMENT NO. 9

"THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION FOR CONTINU-ANCE WAS AN ABUSE OF DISCRETION WHICH PREVENTED DEFENSE COUNSEL FROM ADEQUATELY PREPARING FOR TRIAL AND PREJUDICED APPELLANT."

Appellant states that trial was originally set for September 22, 1986, and that defense counsel filed a motion for continuance on August 15, 1986.

This is not entirely accurate. The record reflects that appellant was indicted on May 9, 1986, and trial was originally scheduled for July 7, 1986. On May 27, 1986, appellant filed a motion for a reasonable continuance to adequately prepare for trial. On June 19, 1986, appellant filed a "Waiver of Right to Speedy Trial" and requested an indefinite continuance. On June 19, 1986, the trial court granted the continuance and rescheduled the trial for September 22, 1986.

On August 15, 1986, appellant filed another motion for continuance, requesting that the trial be continued until December 1, 1986 because defense counsel needed adequate time to prepare for trial, claiming that otherwise they would be ineffective at trial. On August 20, 1986, the trial court granted the continuance in part and set the trial for November 5, 1986.

Thus, appellant's trial was continued from July 7, 1986 to November 5, 1986, just two days shy of four months. During this time, defense counsel was well aware that appellant was facing a possible capital sentence and was afforded reasonable time to prepare.

Appellant cites *State v. Johnson* (1986), 24 Ohio St. 3d 87, in support of his argument that the trial court's denial of a continuance until December 1, 1986 was an arbitrary abuse of discretion.

Appellant's argument is without merit. The *Johnson* case is clearly distinguishable from the case *sub judice*. In *Johnson*, defense counsel discovered new material evidence and sought a one-week continuance which the trial court denied. The Supreme Court was convinced that this denial of a continuance deprived the defendant of a fair trial.

In the case *sub judice*, there was no allegation of new or material evidence being discovered or anything else of that magnitude. In addition, the trial court granted this second continuance, in part, from September 22, 1986 to November 5, 1986.

The decision of whether or not to grant a continuance Is within the sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St. 2d 65. Appellant has failed to demonstrate that the court's partial denial of his motion for continuance was unreasonable, arbitrary or unconscionable; therefore, appellant's ninth assignment of error is not well taken.

### ASSIGNMENT NO. 10

"THE APPELLANT WAS PREJUDICED BY THE TRIAL COURT'S CONSIDERATION OF VARIOUS IRRELEVANT AND PREJUDI-CIAL FACTORS AND FAILURE TO CONSID-ER MITIGATING EVIDENCE IN ARRIVING AT ITS CONCLUSION THAT THE DEATH SENTENCE WAS APPROPRIATE."

The issues and arguments raised in appellant's tenth assignment of error have already been addressed in our discussion of the sixth assignment of error and found to be without merit.

Pursuant to the law pronounced in *State v. Stumpf, supra,* and *State v. Jester, supra,* the trial court is permitted to rely upon and cite nonstatutory aggravating factors in weighing the aggravating and mitigating factors.

Appellant further argues that the trial court failed to consider appellant's youth, drug and alcohol abuse, or his personal or social history as mitigating factors because the court concluded that there was an absence of mitigating factors in the case. This argument is not supported by the facts and the text of the trial court's opinion.

On its face, the trial court's opinion shows that the trial court has given consideration to the mitigating factors and has properly weighed them against the aggravating factors. After weighing the mitigating factors and analyzing the evidence in the case, the trial court found that the mitigating factors were not credible. Thus, the court clearly identified and found mitigating factors but found that they lacked credibility.

Nevertheless, as stated previously in the sixth assignment of error, any error committed by the trial court in weighing the aggravating and mitigating circumstances will be cured by this court's independent review. *State v. Holloway, supra.*

Accordingly, appellant's tenth assignment is without merit.

### ASSIGNMENT NO. 11
### "THE EXCLUSION OF MITIGATING EVIDENCE THROUGH OPERATION OF THE RULES OF EVIDENCE PREJUDICED APPELLANT."

Appellant claims that the trial court erred in excluding important mitigating evidence during the mitigation phase of the trial. Appellant asserts that the trial court used the Ohio Rules of Evidence to exclude evidence of his parents' lack of concern for him, his history of drug abuse, the poor living conditions of his family, his lack of early moral development, and the magnitude of pressures on him at the time of the crimes. Appellant argues that the rules of evidence do not apply in mitigation proceedings.

Appellant relies on Evid. R. 101 which provides, in pertinent part:

"***

"(C) Exceptions. These rules (other than with respect to privileges) do not apply in the following situations:

"***

"(3) Miscellaneous Criminal Proceedings. Proceedings for extradition or rendition of fugitives; *sentencing;* granting or revoking probation; issuance of warrants for arrest, criminal summonses and search warrants; and proceedings with respect to release on bail or otherwise." (Emphasis added.)

The Ohio Supreme Court, however, has held that the rules of evidence are applicable to the mitigation phase of a capital murder trial, subject to specified exceptions. *State v. Jenkins, supra,* at 171. Those exceptions include, *inter alia,* the submission of a presentence report, a psychiatric examination and report, and the

provision for an unsworn statement by the defendant. This point of law has since been upheld in *State v. Glenn* (1986), 28 Ohio St. 3d 451, and *State v. Esparza* (1988), 39 Ohio St. 3d 8.

In *Glenn, supra,* the trial court refused admission of a video tape of the defendant's mother discussing his background. The trial court ruled that the evidence was properly excluded in that the mother was available to testify and there was no way for the prosecutor to cross-examine the video tape. The trial court also noted that the substantive issues presented in the video tape were substantially included in the testimony of other defense witnesses.

Likewise, in the instant case, the testimony that was excluded was either hearsay evidence that could have been introduced through the original source or cumulative evidence that had already been introduced in prior testimony. As appellee correctly pointed out, there was testimony presented to the jury by other witnesses regarding all of the topics that appellant claims were wrongfully excluded. The trial court did not err in excluding this evidence pursuant to the Ohio Rules of Evidence and *Jenkins, supra.*

This court is mindful of the fact that pursuant to R.C. 2929.04(C) a defendant should be given great latitude in the presentation of mitigating factors. A review of the mitigation phase of the proceedings in the trial court indicates the court gave full spirit to this latitude.

Appellant's eleventh assignment of error is without merit.

### ASSIGNMENT NO. 12
### "IMPROPER TESTIMONY ON THE INFLAMMATORY FACTS OF A DIFFERENT CAPITAL OFFENSE COMMITTED BY A DIFFERENT CAPITAL DEFENDANT PREJUDICED APPELLANT."

Appellant asserts that the trial court erred in permitting the state's expert witness to testify, during the mitigation phase, regarding the inflammatory facts surrounding a different capital crime committed by a different capital defendant.

During the mitigation phase, the state's expert psychiatrist testified that the appellant had a personality disorder and, as such, it could not rise to the level of a mental disease. On cross-examination, the appellant sought to discredit the psychiatrist by introducing evidence of another capital murder case in which the doctor testified, the Frank Spezak case from Cleveland. The appellant questioned the doctor as to whether in that case he, in fact, stated that a personali-

ty disorder *could* rise to the level of a mental disease. In response to appellant's attack on the psychiatrist, the state attempted to rehabilitate their witness by having him explain the different set of circumstances that were present in the Spezak case and, thus, the difference in his opinions in the two cases. It was the doctor's descriptions of Spezak's personality disorders that appellant claims were inflammatory.

The Ohio Supreme Court has held that the control of redirect examination is within the discretion of the trial court and will not be reversed, absent a showing of a clear abuse of that discretion. *State v. Wilson* (1972), 30 Ohio St. 2d 199. There was clearly no abuse of discretion in allowing the state to rehabilitate their expert witness, especially in light of the fact that it was the appellant who raised the topic of the Spezak case.

Appellant also argues that this testimony was inadmissible under Evid. R. 403(A), which provides:

"*** Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

In the case *sub judice,* a careful review of the relevant portion of the transcript indicates that there was no attempt by the state to confuse the facts of the Spezak case with those in front of this jury. Appellant underestimates the intelligence of the jurors if he honestly believes they were confused or misled by the doctor's testimony. The danger of unfair prejudice did not substantially outweigh the probative value of the evidence. The trial court properly admitted the doctor's testimony.

Appellant's twelfth assignment of error is not well taken.

### ASSIGNMENT NO. 13
"THE APPELLANT WAS PREJUDICED BY THE DENIAL OF HIS MOTION TO SUPPRESS HIS INCULPATORY STATEMENTS WHICH WERE INVOLUNTARY AND COERCED FROM HIM AFTER HE HAD INVOKED HIS RIGHT TO REMAIN SILENT."

Appellant alleges that the trial court erred in denying his motion to suppress inculpatory statements made to the police on May 6, 1986. He claims that the statements were a product of his intoxication, that they were coerced after he invoked his right to remain silent, and that subsequent written statements were "fruits of the poisonous tree."

A suppression hearing was held by the trial court on October 2, 1986. At that hearing, appellant produced no evidence that indicated that he was under the influence of drugs or alcohol at the time his statements were made. On the other hand, four police officers from the Warren Police Department testified that appellant did not appear to he intoxicated, nor was there an odor of alcohol on the appellant's breath. In addition, appellant's friend, Michael Moore, who had been with the appellant earlier in the day on May 6, 1986, testified that the appellant was sober and in control of his faculties when he went to the police department. The trial court properly rejected appellant's argument that his waiver was not voluntary as the state met its burden of proof.

Evidence from the suppression hearing also indicates that the appellant was given his *Miranda* warnings on three separate occasions on May 6, 1986. He waived his constitutional rights to remain silent and to talk to an attorney at 4:40 p.m., at 5:47 p.m., and again at 9:34 p.m. On the first two occasions, the form appellant signed specifically stated that he was not under arrest and was free to leave. On the final occasion, appellant was placed under arrest.

Next, appellant argues that he was coerced into a confession after he invoked his right to remain silent. After talking freely on video tape for over an hour, appellant requested that the camera be turned off and stated that he did not want to talk. At that point, one of the detectives asked appellant if he would be willing to talk if the video camera was turned off. Appellant indicated that he would talk if the camera was off. A review of the tape and transcript thereof exhibits to this court a desire by appellant to continue talking provided that the video camera be turned off. The detectives complied with appellant's requests.

At the suppression hearing, the officers who were present during the questioning testified that, after the use of the video equipment was discontinued, the appellant continued to talk for approximately fifteen minutes. Appellant then instructed the detectives to turn the video equipment on again, and he continued to talk for another nineteen minutes. All of the detectives testified that appellant was doing the great majority of the talking and that he requested the video equipment be turned on. Appellant admitted that he told the detectives to turn the camera back on.

Thus, there was no real break in appellant's statement to the police. It is apparent that appellant was more than willing to talk after the video tape was turned off and continued to do so after it was turned on again. There is no indication that appellant invoked his right to remain silent.

Even if appellant had indicated that he did not want to continue talking, his argument would still fail. The evidence indicates that once the camera was turned off, appellant continued to talk and eventually instructed the detectives to turn the camera on again.

The United States Supreme Court has held that a suspect who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself* initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona* (1981), 451 U.S. 477, (emphasis added). This decision has recently been reaffirmed in *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L.Ed. 2d 704, and was adopted by the Ohio Supreme Court in *State v. Van Hook* (1988), 39 Ohio St. 3d 256. The present case fits within the *Edwards* scenario as the appellant reinitiated conversations with the police. Therefore, the trial court properly rejected appellant's second argument under this assigned error.

Finally, appellant asserts that the statement he signed when he was arrested, at 9:34 p.m. on May 6, 1986, should have been suppressed because it was "fruit of the poisonous tree." Since it has been determined that the police followed proper procedures, then there is no "poisonous tree" to begin with and, thus, no poisonous fruit.

Appellant's thirteenth assignment of error is not well taken.

### ASSIGNMENT NO. 14
"THE FAILURE OF THE TRIAL COURT TO PERMIT THE DEFENSE TO EXAMINE JUROR SARA PERRY REGARDING HER VIEWS ON CAPITAL PUNISHMENT BEFORE SHE WAS DISMISSED PREJUDICED APPELLANT."

Appellant argues that the trial court erred in excusing prospective juror Sara Perry without first allowing appellant's counsel the opportunity to question her. Appellant's argument is based primarily on R.C. 2945.27, Crim. R. 24(A), and *State v. Anderson* (1972), 30 Ohio St. 2d 66.

The record reveals, however, that appellant did not attempt to question Perry, nor did he object to the fact that she was excused.
"***

"Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal. *Snyder v. Stanford* (1968), 15 Ohio St. 2d 31, 238 N.E. 2d 563; *Oney v. Needham* (1966), 6 Ohio St. 2d 154, 216 N.E. 2d 625. ***" *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St. 2d 41, 43.

Appellant has, therefore, waived this issue for review.

Even if appellant had objected, his argument would be without merit. Perry unequivocally made it known during the voir dire examination that under no circumstances would she vote for a death sentence.
"***

"THE COURT: 'If the aggravating circumstances that the State has proved beyond a reasonable doubt exceed the mitigating factors that the Defendant has submitted for your consideration, which I will tell you to consider, if you find that as a Jury, I would then direct you that you must impose the death penalty. If it doesn't exceed the aggravating circumstances, if the aggravating circumstances don't exceed the mitigating factors, I would then direct you that you are to opt for one of two life sentences. Can you follow my instructions and impose the death penalty or life sentences as the case might be'?

"A I could not impose capital punishment.

"THE COURT: Do you want to tell me why? You understand what the law says. That is not my idea. The law says that I'm to instruct you if the aggravating circumstances of this homicide outweigh the mitigating factors, the law says I'm to direct you to impose the death penalty as one of 12 jurors. You say you can't do that?

"A I can't do it.

"THE COURT: Do you want to tell us why, tell the attorneys there?

"A May I make a statement about it?

"THE COURT: Sure.

"A I have mulled over it in my mind and come at it in various ways, and deep inside me, Sara cannot sign her name or whatever you have to do to put another human being to death.

"THE COURT: You know what the word unequivocal means, don't you? Are you telling me under no circumstances at all would you vote for the death penalty, even though the law and my instructions would require it?

"A. As I say, I have put myself in various positions in my mind, and I can't.
"***"

The Ohio Supreme Court encountered a similar situation in *State v. Jenkins, supra*. There, the Supreme Court upheld the dismissal of four prospective jurors who had indicated that they would not be able to follow the trial court's instructions regarding the death sentence. The Court stated:

"*** The record amply establishes Tedeschi's [prospective juror] unequivocal commitment not to consider the death penalty under any circumstance and not to follow the trial court's instruction relating to capital punishment. This potential juror's exclusion was consequently proper under *Witherspoon* and the trial court committed no error in so doing. ***" *Id.* at 185.

It is clear that Perry's removal was in accordance with the standard set forth in *Wainwright v. Witt, supra,* and adopted by the Ohio Supreme Court in *State v. Rogers, supra*. Under that standard, a juror may be removed if his attitude toward the death penalty is such that would prevent or substantially impair the performance of his duties as a juror to follow the trial court's instructions.

It has been held that the scope of voir dire is within the discretion of the trial court, and the judgment will only be reversed upon a showing of abuse of discretion. *State v. Jenkins, supra*. In the present case, the trial court did not abuse its discretion in excusing Sara Perry based on her convictions.

Appellant's fourteenth assignment of error is without merit.

### ASSIGNMENT NO. 15
#### "THE FAILURE OF THE TRIAL COURT TO EXCUSE PROSPECTIVE JURORS WHO COULD NOT CONSIDER MITIGATING EVIDENCE AND WHO WOULD AUTOMATICALLY VOTE FOR DEATH UPON A SHOWING OF GUILT PREJUDICED APPELLANT."

Appellant claims that the trial court erred in not excusing prospective jurors who could not consider mitigating evidence in the sentencing phase. If there were jurors who, in fact, had that attitude, then it certainly would have prejudiced the appellant not to excuse them; but a careful review of the record indicates that such was not the case.

Appellant asserts that jurors Leschinsky, Reibold, and Berenics displayed an unwillingness to take mitigating factors into consideration if and when the appellant was found guilty of the murders. However, upon questioning by the trial court with a more detailed explanation of mitigating factors, all three jurors indicated that they would, in fact, follow the trial court's instructions and not automatically recommend a death sentence upon a showing of guilt. It is clear that, once the jurors understood the system better, they expressed a willingness to follow the rules.

It was not error for the trial court to not excuse these jurors for cause in light of the standard for removal set forth in *Wainwright v. Witt, supra,* and adopted by the Ohio Supreme Court in *State v. Rogers, supra*. Under *Witt,* the standard is "*** whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath *[Adams v. Texas* (1980), 448 U.S. 38, 45]." *Id.* at 424.

Appellant's fifteenth assignment of error is without merit.

### ASSIGNMENT NO. 16
#### "THE REMOVAL OF PROSPECTIVE JURORS MERELY EXPRESSING OPPOSITION TO THE DEATH PENALTY PREJUDICED APPELLANT."

Appellant asserts that the trial court erred in removing prospective jurors who merely expressed opposition to the death penalty. Appellant also claims that it was error for the prosecutor to question the prospective jurors as to whether they could impose the death sentence on this particular defendant.

First, appellant argues that the proper standard to be used for removing jurors in a capital case is set forth in R.C. 2945.25, which provides, in pertinent part:

"*** A person called as a juror in a criminal case may be challenged for the following causes:
"***

"(C) In the trial of a capital offenses that he unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case. A prospective juror's conscientious or religious opposition to the death penalty in and of itself is not grounds for a challenge for cause. All parties shall be given wide latitude in voir dire questioning in this regard.
"***"

This standard reflected the rationale of *Witherspoon v. Illinois* (1968), 391 U.S. 510.

Subsequent to the *Witherspoon* decision and the enactment of R.C. 2945.25, the United States Supreme Court announced a new standard for removal of prospective jurors in *Wainwright v.*

*Witt, supra.* The *Witt* standard was thereafter adopted and applied by the Ohio Supreme Court in *State v. Rogers, supra.* See, also, *State v. Beuke* (1988), 38 Ohio St. 3d 29; *State in. DePew, supra;* and *State in. Lawrence* (1989), 44 Ohio St. 3d 24. The standard enunciated in *Witt, supra,* and followed by the Ohio Supreme Court is "*** whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath [Adams v. Texas* (1980), 448 U.S. 38, 45]." *Id.* at 424.

In the present case, both of the prospective jurors that appellant claims were wrongfully excused for cause stated that they would not be able to recommend a death sentence, no matter what the judge's instructions stated. Clearly, under the *Witt* standard, these jurors were properly excused. This is especially true where deference must be given to the trial judge who sees and hears the jurors. *Wainwright v. Witt, supra.*

Secondly, the appellant argues that it was improper for the prosecutor to question jurors as to the death penalty for this particular defendant.

The Ohio Supreme Court in *State v. Rogers, supra,* addressed a similar issue. In that case, the defendant had objected to the prosecutor phrasing questions to prospective jurors about the death sentence as it applied to that specific case. The Supreme Court held that such a line of questioning was proper even though the jurors had not yet heard any evidence in the case.

Moreover, the language of R.C. 2945.25(C) is couched in terms of a death sentence in a particular case, not any possible case. For the foregoing reasons, the trial court did not err in dismissing certain prospective jurors for cause.

Appellant's sixteenth assignment of error is not well taken.

### ASSIGNMENT NO. 17
"THE PROSECUTOR'S COMMENTS ON THE APPELLANT'S EXERCISE OF HIS RIGHT TO COUNSEL MADE DURING THE *VOIR DIRE* OF JUROR THOMAS TERPIN PREJUDICED THE APPELLANT."

Appellant alleges that the prosecutor's questioning of juror Thomas Terpin during voir dire was prejudicial. In particular, appellant claims that the prosecutor attacked the fact that he exercised his constitutional right to counsel.

A review of the transcript reveals that, in addition to the appellant, there were three attorneys and a jury selection expert seated at the defense trial table. The state was being represented by two attorneys, the county prosecutor and an assistant. The prosecutor merely asked Terpin whether he would favor the appellant based on the fact that the appellant was represented by more attorneys than the state.

There is no indication that the prosecutor was trying to prove the appellant's guilt by ominously pointing to the fact that the appellant had sought counsel. Clearly, any defendant on trial for a capital offense is going to seek the help of an attorney. No reasonable juror would infer that the presence of counsel indicates guilt by the defendant in such a situation. The prosecutor was s~ply inquiring as to whether Terpin would make a decision in the case based on the number of attorneys that represented the respective parties. Appellant has failed to show prejudicial error.

Appellant's seventeenth assignment of error is without merit.

### ASSIGNMENT NO. 18
"THE TRIAL COURT ABUSED ITS DISCRETION BY UNREASONABLY RESTRICTING THE *VOIR DIRE* EXAMINATIONS OF PROSPECTIVE JURORS."

Appellant argues that the trial court unreasonably restricted the examination of prospective jurors during voir dire. Specifically, appellant alleges that the trial court limited his inquiries into the backgrounds of the prospective jurors that were intended to determine if any of the jurors would be biased in favor of the death penalty or whether a juror held a bias which would preclude his or her consideration of crucial mitigating factors.

R.C. 2945.27 provides:
"*** The judge of the trial court shall examine the prospective jurors *** as to their qualifications to serve as fair and impartial jurors, but he shall permit *reasonable* examination of such jurors by the prosecuting attorney and by the defendant or his counsel." (Emphasis added.)

Crim. R. 24(A) also addresses the examination of jurors. It provides, in pertinent part:
"*** Any person called as a juror for the trial of any cause shall be examined *** as to his qualifications. The court may permit the attorney for the defendant *** and the attorney for the state to conduct the examination of the prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the state and defense to supplement the examination by further inquiry."

In a recent Ohio Supreme Court case, the Court addressed the scope of voir dire in capital cases, and held:

"***

"The scope of voir dire is within the trial court's discretion and varies depending on the circumstances of each case. *State v. Anderson* (1972), 30 Ohio St. 2d 66, 73, 59 O. O. 2d 85, 89, 282 N.E. 2d 568, 572. Any limits placed thereon must be reasonable. *State v. Bridgeman* (1977), 51 Ohio App. 2d 105, 109-110, 5 0.0. 3d 275, 277, 366 N.E. 2d 1378, 1383.***" *State v. Bedford, supra,* at 129.

In the present case, most of the questions that were not allowed by the trial court involved mitigation factors such as drug abuse, alcoholism, and family problems. In *Bedford, supra,* the court ruled that such questioning is not appropriate for the voir dire phase, concurring with the trial court that it was improper for the defense to seek "a commitment of prospective jurors prior to the introduction of any evidence." *Id.* at 129.

After briefly reviewing the 1442 pages of voir dire in the case *sub judice,* and in light of R.C. 2945.27, Crim. R. 24(A), and the holding in *Bedford, supra,* it is apparent that the trial court did not improperly restrict the scope of questioning.

Appellant's eighteenth assignment of error is not well taken.

### ASSIGNMENT NO. 19
"THE FAILURE OF THE TRIAL COURT TO CURE ARGUMENTS BY THE STATE THAT A LIFE VERDICT WOULD BE A REDUCTION OF A DEATH SENTENCE PRESUMPTION PREJUDICED APPELLANT."

Appellant asserts that the trial court erred in failing to give a curative instruction to the jury in the mitigation phase regarding the state's arguments that a life verdict would be a reduction of a death sentence presumption.

Although the prosecutor, on numerous occasions, asked the jury not to give the appellant the reduced sentence of life imprisonment, at no point did the prosecutor tell the jury that there existed a presumption in favor of the death penalty. Parties are given wide latitude in making closing arguments. *State v. Maurer, supra; State v. Broom* (1988), 40 Ohio St. 3d 277.

Additionally, the trial court's charge to the jury accurately stated which party had the burden of proof. The mitigation and sentencing record reveals the following instruction by the trial court:

"***

"Burden of proof. The State of Ohio seeks findings that a sentence of death be imposed on the Defendant for each of the aggravated murders for which he was convicted; that is, the State seeks the death penalty twice. Once for the death of Doris Montgomery and once for the death of Raymond Montgomery. Before you can make such a finding concerning the death of Doris Montgomery, the State has the burden of proving by proof beyond a reasonable doubt that one or both of the aggravating circumstances in the first count of the indictment which the Defendant has been guilty of committing is sufficient to outweigh the factors in mitigation for that murder.

"Before you can make such a finding concerning the death of Raymond Montgomery, the State has the burden of proving by proof beyond a reasonable doubt that one or both of the aggravating circumstances in the second count of the indictment which the Defendant has been found guilty of committing is sufficient to outweigh the factors in mitigation for that murder. The State of Ohio is limited by statute in its presentation of evidence to any evidence raised at the trial that is relevant to the aggravated circumstances the Defendant was found guilty of committing.

"The Defendant has no such burden of proof and no such limitation, however, the Defendant does have the burden to go forward with the evidence on the mitigating factor (*sic*). As noted, the State has already proved beyond a reasonable doubt that aggravating circumstances exist in this case. In reaching your verdict you are instructed that you will consider all of the evidence, including exhibits presented in the first phase of this trial which you deem to be relevant to the proven aggravating circumstances as if fully presented again in this proceedings (*sic*), along with all of the additional evidence relative to the mitigating factors offered by the Defendant and the rebuttal evidence presented by the State.

"***"

The jury was clearly given the proper instruction. Appellant's nineteenth assignment of error is without merit.

### ASSIGNMENT NO. 20
"THE REPEATED MISLEADING DEFINITIONS OF CRUCIAL SENTENCING PHASE TERMS BY THE PROSECUTOR AND TRIAL COURT TO VENIRE MEMBERS PREJUDICED THE APPELLANT."

Appellant claims that the state and the trial judge used misleading definitions of crucial sentencing phase terms to venire members which

prejudiced him. Specifically, appellant objects to the characterization of aggravating circumstances as "bad things" and mitigating factors as "good things." The record reveals that the prosecutor and trial judge did, in fact, use these characterizations repeatedly during voir dire. However, the record also reveals that counsel for the appellant used these same descriptive words during his questioning of potential jurors. The voir dire record reflects the following exchange between defense counsel and a prospective juror:

"***

"Q. When Mr. Watkins was asking you questions about that and told you about the balancing, he mentioned something about the mitigating factors. You understand what those are?

"A. Yes, I think so.

"Q. And the aggravating circumstances?

"A. (Witness nods head in the affirmative.)

"Q. And I think it was mentioned that mitigating factors might be more in favor of life and aggravating circumstances for death.

"A. (Witness nods head in the affirmative.)

"Q. Do you understand that there is a standard, there is a burden that the State has to meet just like in the innocence and guilt phase where it's not just if it's even or a little bit less on the aggravating circumstances or the *bad things* or things that tend to favor the death penalty. The Judge will instruct you he - has to meet a burden ***." (Emphasis added.)

In addition, there is no evidence in the record that defense counsel ever objected to these alleged improper characterizations Therefore, appellant has waived any possible complaint he may have had and may not raise it as error now. *State v. Wade* (1978), 53 Ohio St. 2d 182.

Appellant's twentieth assignment of error is not well taken.

### ASSIGNMENT NO. 21
"THE COURT'S MISLEADING INSTRUCTION AND IMPROPER STATEMENTS BY THE PROSECUTOR DOUBLING THE NUMBER OF AGGRAVATING CIRCUMSTANCES TO BE CONSIDERED BY THE JURY IN ITS WEIGHING PROCESS PREJUDICED THE APPELLANT."

Appellant argues that the trial court's instructions to the jurors during the mitigation phase misled them into believing that they were to consider four specifications for each of the two counts of aggravated murder.

Appellant's argument centers on comments made to the jury at the outset of the sentencing phase of the proceedings. The trial judge stated, in part;

"*** Keep in mind that the State of Ohio has the burden of proving that the aggravated circumstances set forth in the two specifications in the aggravated murder of Doris Montgomery and the aggravating circumstances set forth in the two specifications in the aggravated murder of Raymond Montgomery, which the Defendant has been found guilty of committing, outweigh any mitigating factors found present before you can find that the sentence or sentences of death should be imposed on the Defendant.***"

These comments were not part of the jury charge. Additionally, appellant's interpretation of these comments is not supported by the language therein.

Subsequently, the trial court charged the jury. There is no evidence to suggest that the court's instructions were misleading. Part of the charge reads:

"***

"I repeat that the purpose of this proceeding is to have you decide whether or not the aggravating circumstances the Defendant was found guilty of committing in each aggravated murder are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death or sentences of death.

"What are aggravating circumstances In this particular case the aggravating circumstances are precisely set out in the specifications contained in the verdict form on the specifications. There are two aggravating circumstances for the first count regarding the death of Doris Montgomery.

"(1) That the Defendant committed aggravated murder while he was committing the offense of aggravated burglary in that the Defendant by force, stealth or deception, trespassed in an occupied structure with purpose to commit a theft offense, and at the time the Defendant inflicted serious physical harm on Doris Montgomery and the occupied structure involved was the permanent habitation of said Doris Montgomery which at the time she was present.

"The homicide itself is not to be considered an aggravating circumstance. The nature and circumstances of the aggravated murder are relevant only insofar as they may relate to any mitigating factors alleged by the Defendant, or any of the aggravating circumstances pertaining to the first count regarding the death of Doris Montgomery for which he was found guilty.

"(2) That the Defendant committed the aggravated murder of Doris Montgomery as part of a course of conduct involving the purposeful killing of two or more persons by the Defendant.

"Likewise, there are two aggravating circumstances for the second count regarding the death of Raymond Montgomery. ***"

The trial court clearly instructed the jury to consider two specifications as aggravating circumstances for each count. This was a proper instruction.

Appellant's twenty-first assignment of error is without merit.

### ASSIGNMENT NO. 22
"THE MISLEADING INSTRUCTION BY THE COURT DIRECTING THE JURY TO WEIGH EACH MITIGATING FACTOR INDIVIDUAL- LY AGAINST THE AGGRAVATING CIR- CUMSTANCES PREJUDICED APPELLANT."

Appellant argues that he was prejudiced by a misleading instruction by the trial court directing the jury to weigh each mitigating factor individually against all of the aggravating circumstances.

The general rule is that jury instructions must be reviewed in their entirety to determine if they contain prejudicial error. *State v. Porter* (1968), 14 Ohio St. 2d 10; *State v. Blevins* (1987), 36 Ohio App. 3d 147.

"A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Price* (1979), 60 Ohio St. 2d 136, paragraph four of the syllabus.

Although it is apparent that the trial court misstated the balancing process at one point in the jury instructions, the court properly instructed the jury to balance the mitigating factors against the aggravating circumstances on at least eight occasions. Viewed in their entirety, the jury instructions were correct pursuant to R.C. 2929.03(D)(2).

Appellant's twenty-second assignment of error is without merit.

### ASSIGNMENT NO. 23
"THE APPELLANT WAS PREJUDICED IN HIS CAPITAL CASE BY THE JOINDER FOR TRIAL OF TWO SEPARATE OFFENSES OC- CURRING AT DIFFERENT TIMES AND PLACES."

Appellant asserts that it was prejudicial error for the trial court not to sever the count involving the aggravated burglary of the Mercer residence for separate trial.

A defendant who asserts that joinder is improper under Crim. R. 14 must show prejudice. *State v. Roberts* (1980), 62 Ohio St. 2d 170. Further, a motion for severance due to prejudicial joinder of offenses is waived unless it is renewed at the close of the state's case or at the conclusion of all the evidence. *State v. Owens* (1975), 51 Ohio App. 2d 132; *State v. Smith* (Mar. 24, 1988), Cuyahoga App. No. 53669, unreported.

In the case *sub judice*, the record does not indicate that appellant renewed his motion for severance, nor does appellant point to any portion of the record where he ever filed such a motion. Therefore, error, if any, has been waived.

Even if appellant had not waived this claimed error, appellant's argument would still be without merit. Appellant's allegation of prejudice is essentially that cumulative evidence was presented showing a propensity by the appellant to take advantage of helpless, elderly people. The Ohio Supreme Court has held, however, that:

"*** Where evidence of each of the joined offenses would be admissible at separate trials, severance is not required because prejudice due to the cumulation of evidence or the inference of a criminal disposition is largely absent. ***" *State v. Hamblin* (1988), 37 Ohio St. 3d 153, 159.

Additionally, Crim. R. 8(A) provides:

"Two or more offenses may be charged in the same indictment *** if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

In the present case, appellant's theft of the Mercer's automobile was part of a common scheme or plan in robbing the Montgomerys. This evidence would have been admissible at the murder trial anyway. Appellant has failed to show any prejudice.

Appellant's twenty-third assignment of error is not well taken.

### ASSIGNMENT NO. 24
"THE FAILURE OF THE TRIAL COURT TO INQUIRE INTO THE EXISTENCE OF A CONFLICT OF INTEREST CONCERNING COURT APPOINTED COUNSEL PREJUDICED APPELLANT."

Appellant argues that the trial court erred in not inquiring further about a potential conflict of interest problem that appellant raised during pretrial motion hearings and at trial. Appellant

was represented by attorneys from the Ohio Public Defender Commission ("OPDC"), and he claims that one of the state's key witnesses, Perry Postlethwaite, had previously been represented by OPDC.

In *United States v. Agosto* (C.A. 8, 1982), 675 F. 2d 965, the court, in addressing a successive representation problem, stated:

"*** privileged information obtained from the former client might be relevant to cross-examination, thus affecting advocacy in one of two ways:

"(a) the attorney may be tempted to use that confidential information to impeach the former client; or

"(b) counsel may fail to conduct a rigorous cross-examination for fear of misusing his confidential information.***" *Id.* at 971.

Appellant, relying upon the pronouncement in *State v. Mock* (1972), 32 Ohio App. 2d 82, argues that the court is under a duty to investigate an alleged conflict of interest. An examination of that issue by this court is predicated upon a review of whether the trial court abused its discretion in rejecting a request to hold a hearing on the matter.

However, we do not find that the dictates of *Mock, supra,* are controlling in this cause as it involved dual representation of codefendants during a single proceeding. More applicable is *State v. Pariseau* (Dec. 15, 1983), Cuyahoga App. No. 45296, unreported, which is factually similar to this cause.

"*** However, defendant failed to supply any evidence to support his hypothesis that the lawyer rejected favorable evidence to avoid a conflict. Defendant provides no affidavit to that effect from himself, the lawyer, or Lewicki. Indeed, Lewicki's affidavit expressly denies that the lawyer suggested any conflict. We might infer without proof that an attorney's possible conflict disrupts vigorous representation, where the two clients are codefendants in the same trial. Cf. *State v. Johnson, supra; State v. Oliver, supra; State v. Mollohan, supra.* We require some further evidence to conclude that dual representation affected either client adversely when the two clients pled guilty in the same proceeding. Cf. *State v. Hubbard* (July 21, 1983), Cuyahoga App. No. 46056, unreported. Similarly, we decline to assume prejudice from dual representation where the clients are involved in judicially separate proceedings." *Pariseau, supra.*

See, also, *State v. Johnson* (Feb. 28, 1985), Cuyahoga App. No. 48168, unreported. In both

instances, the court noted that it is difficult to find a conflict when the trials of the codefendants proceed separately. Such rationale is even more compelling where the witness to be examined is the codefendant who has already pleaded guilty. Furthermore, where the defendant fails to demonstrate in the record how he was prejudiced by the alleged conflict, none will be presumed.

In addition, the appellant bears the onus of demonstrating how he was prejudiced by the dual representation by appropriate submissions in the record of this case transmitted to this court. *Pariseau, supra.* Absent such a showing, this court will not assume the trial court acted unreasonably in rejecting the suggestion of an alleged conflict.

Furthermore, a review of the record indicates that Postlethwaite was effectively cross-examined by defense counsel. There is no evidence to suggest that appellant's right to effective assistance of counsel was violated.

Appellant's twenty-fourth assignment of error is without merit.

## ASSIGNMENT NO. 25

"THE PROSECUTOR'S AND TRIAL COURT'S COMMENTS TO THE VENIRE AND THE JURY THAT THEIR SENTENCING VERDICT WAS ONLY A REVIEWABLE 'RECOMMENDATION' DIMINISHED THE JURY'S RESPONSIBILITY AND MADE THE DEATH VERDICT UNRELIABLE THEREBY PREJUDICING APPELLANT."

Appellant argues that the trial judge and prosecutor erred in commenting to the jury that a death penalty recommendation would not be binding on the trial court.

Appellant's argument on this issue has been repeatedly rejected by the Ohio Supreme Court on previous occasions. *State v. Bradley, supra; State v. DePew, supra; State v. Buell* (1986), 22 Ohio St. 3d 124.

Appellant's twenty-fifth assignment of error is not well taken.

## ASSIGNMENT NO. 26

"THE PROSECUTOR'S ARGUMENTS THAT THE ABSENCE OF STATUTORY MITIGATING FACTORS WAS AGGRAVATING, IN COMBINATION WITH THE COURT'S INSTRUCTION TO CONSIDER STATUTORY MITIGATING FACTORS NOT RAISED BY THE DEFENSE UNCONSTITUTIONALLY PREJUDICED APPELLANT."

Appellant argues that it was error for the trial court to allow the state, during the mitigation phase, to explain to the jury that the lack of

a significant history of prior criminal convictions is a mitigating factor but that an extensive criminal history is not a mitigating factor. Further, appellant asserts that it was error for the trial court to instruct the jury on all seven mitigating factors set forth in R.C. 2929.04(B), including those not raised by the defense.

The Ohio Supreme Court has addressed these issues and decided them adversely to appellant's position. *State v. Benner* (1988), 40 Ohio St. 3d 301; *State v. DePew supra.* Appellant's argument is, therefore, summarily rejected. *State v. Poindexter, supra.*

Appellant's twenty-sixth assignment of error is without merit.

### ASSIGNMENT NO. 27
"THE TRIAL COURT'S FAILURE TO GRANT THE APPELLANT'S MOTION TO DISMISS HIS CAPITAL INDICTMENT PREJUDICED THE APPELLANT BY ENSURING THE ARBITRARY AND DISCRIMINATORY IMPOSITION OF THE DEATH PENALTY."

Appellant asserts that the Ohio death penalty statutes are unconstitutional in that they violate the Eighth and Fourteenth Amendments to the United States Constitution as well as Sections 9 and 16, Article I, of the Ohio Constitution.

The Ohio Supreme Court has repeatedly held Ohio's death penalty to be constitutionally valid. *State v. DePew, supra; State v. Steffen, supra; State v. Jenkins, supra.* See, also, *State v. Hill, supra.*

Appellant's twenty-seventh assignment of error is without merit.

### ASSIGNMENT NO. 28
"OHIO'S MANDATORY CAPITAL SENTENCING SCHEME PREVENTED THE JURY FROM DECIDING WHETHER DEATH WAS THE APPROPRIATE PUNISHMENT THEREBY PREJUDICING APPELLANT."

Appellant again asserts that the Ohio death penalty statutes are unconstitutional in that they violate the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I, of the Ohio Constitution. In particular, appellant objects to the mandatory scheme of weighing mitigating factors against aggravating factors to determine whether the death sentence is mandated.

This issue has been previously raised and decided by the Ohio Supreme Court, which held the sentencing scheme to be constitutionally valid. *State v. Buell, supra; State v. Bradley, supra.*

Appellant's final assignment of error is without merit.

Pursuant to R.C. 2929.05(A), we will now independently review and weigh the facts to determine whether the aggravating circumstances outweigh the mitigating factors so as to warrant the penalty of death.

The aggravating circumstances of count one of the indictment, concerning the death of Doris Montgomery, and count two of the indictment, concerning the death of Raymond Montgomery, are the same. The aggravating circumstances in both counts are the purposeful killing of two or more people, R.C. 2929.04(A)(5), and that the aggravated murder was committed during the commission of an aggravated burglary, R.C. 2929.04(A) (7).

We find that these aggravating circumstances were established by competent evidence beyond a reasonable doubt as to each count.

Under R.C. 2929.04(B), we must weigh these aggravating circumstances against all mitigating factors which may be evidenced by the nature and circumstances of the offense; the history, character, and background of the appellant; and any of the following mitigating factors which may exist:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the--law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

Our review of this case shows that mitigating factors are virtually nonexistent.

The nature and circumstances of the offense indicate that appellant planned the brutal, cold, and senseless slaughter of two helpless elderly

victims, Doris Montgomery, age eighty, and Raymond Montgomery, age seventy-seven, who had been generous and kind to the appellant in the past, hiring him to perform small tasks around their home. By appellant's own confession, it was this familiarity and prior relationship that prompted Raymond Montgomery to open the door to his home. The appellant then lured the elderly man to the second floor of the home on the pretense of retrieving a necklace appellant claimed to have left there. On the second floor, the appellant attacked the elderly man from behind. Wearing rubber gloves, the appellant stabbed the frail man five times with a large butcher knife he had stolen from another home for the occasion. After the elderly man's body dropped to the floor, appellant went downstairs to murder the man's wife, an elderly, bedridden invalid who watched fearfully and defenselessly as the appellant approached to murder her. Appellant stabbed the woman nine times with the large butcher knife in order to eliminate her as a witness against him. He then burglarized the home and left to get rid of his blood-stained clothes to cover up the crimes. Appellant showed no remorse. Instead, he went out to a bar to party with the money he stole. He later returned to rob the dead bodies.

Factors one, two, five and six of R.C. 2929.04(B) listed above are not applicable. There is no evidence to indicate that the victims induced or facilitated the offense or that appellant was under duress, coercion, or strong provocation. Moreover, appellant was the sole and principal offender of the Montgomery murders.

There is some evidence to support mitigating factors three and four. Appellant was twenty years old at the time of his sentencing and, apparently, nineteen years old when the crime was committed. Appellant presented evidence of his below average intelligence, poor family environment in which discipline was lacking, and antisocial personality disorder.

While appellant had lower intelligence, we find that he had sufficient intelligence to know right from wrong and was in full control of his faculties when he planned and committed the crimes. Furthermore, appellant's family environment while far from being perfect or ideal, was no different from millions of other families whose children, like appellant's siblings, became law-abiding members of society and did not grow up to commit heinous crimes.

There was some evidence of appellant's drug and alcohol abuse. However, the use of drugs or alcohol did not substantially affect appellant's conduct either prior to, during, or subsequent to the murders as is evidenced by appellant's actions. Appellant was able to plan the murders in detail and knew what he was doing. He obtained rubber gloves, a large butcher knife and, on the pretext of retrieving his necklace, the appellant obtained entry into the house where he lured one victim upstairs to be murdered. After the murder, appellant disposed of his blood-stained clothes and shoes. Moreover, he was able to recount in detail the events of the evening in question. Had appellant been influenced or impaired by drugs or alcohol, he could never have recounted the events in such detail as is evidenced by the record. Therefore, we find the use of drugs and alcohol not to be a persuasive mitigating factor.

Appellant's psychologist, Dr. Jackson, testified that appellant did not have a mental disease but had an antisocial personality disorder which, in his opinion, was evidence of a mental defect. The state's expert testified that appellant had neither a mental disease nor a mental defect.

We agree with the trial court that, although he had an antisocial personality, the appellant did not lack substantial capacity to appreciate the criminality of his conduct or to conform bin conduct to the requirements of the law. Thus, the age, intelligence, history, background and character of the appellant are entitled to little weight as mitigation.

We conclude that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

Finally, the court is required to determine whether a death sentence in appropriate. pursuant to R.C. 2929.05(A), an appellate court, upon review, must consider whether the sentence imposed is excessive or disproportionate to the penalty imposed in similar cases.

The Ohio Supreme Court has held that the proportionality review is satisfied by reviewing those cases already decided by the reviewing court in which the death penalty has been imposed. *State v. Steffen, supra* paragraph one of the syllabus. This court has considered three prior cases in which the death penalty was imposed: *State v. Glenn* (Feb. 15, 1985), Portage App. No. 1286, unreported; *State v. Wiles* (June 3, 1988), Portage App. No. 1675, unreported; and *State v. Hill, supra.*

In *Glenn, supra,* the defendant had plotted the escape of his half brother from the Mahoning County Jail. While his half- brother was being

transported to a doctor's office by a sheriff's deputy, defendant struck the police car with his own car. When the deputy exited the patrol car, the defendant shot and killed him. During the mitigation phase of the trial, it was established that the defendant was only twenty years old, that he had a low intelligence level and had special educational needs, and that he came from a poor background and environment. Nevertheless, this court, by a two to one vote, held that the death penalty was appropriate.

In *Wiles, supra*, the defendant was burglarizing the home of his former employers. He waited until he thought the house was unoccupied and then entered through an unlocked door. Once inside, the defendant was surprised by the fifteen year old son of his former employers. The defendant stabbed the smaller, weaker boy with a butcher knife at least eleven times and escaped with $260 cash.

The mitigating factors that the court considered included the fact that the defendant was twenty-two years old at the time of the murder, and that the defendant eventually turned himself over to the police. However, he denied any involvement in the murder and had turned himself in only after fleeing to Georgia and running out of food and money. Upon review, this court affirmed the trial court's decision holding that the death penalty was neither excessive nor disproportionate.

In *Hill, supra*, the defendant tackled a twelve year old boy who was riding his bicycle through a wooded area behind a grocery store. The defendant, and an accomplice, beat the boy violently, sexually assaulted him, impaled him with a long wooden instrument, strangled him with his own underwear, and burned his face and body by pouring lighter fluid on him and igniting it. The boy was left for dead but managed to live for two more days.

The court considered a number of mitigating factors. The defendant was eighteen years old at the time of the incident and had diminished mental capacity. He was mildly to moderately retarded, although he understood the difference between right and wrong. It was also established that the defendant was essentially illiterate. This court held that the death sentence was appropriate.

By comparison to the aforementioned cases, the sentence in the present case is not disproportionate. The defendant knew the elderly victims and had, in fact, worked for them previously. On the evening in question, the defendant lured the

seventy-seven year old man upstairs where he stabbed him five times. Then the defendant went back downstairs and stabbed the eighty year old woman nine times. Following the murders, the defendant went to a tavern to brag about the killings to his friends. The defendant later returned to the Montgomery home to steal money, jewelry and a gun. He capped off his busy evening with breakfast at Denny's restaurant. The defendant never exhibited any sign of remorse about killing the Montgomerys.

In comparing the facts and circumstances of the instant cause to the previous death penalty cases that this court has considered, appellant's death sentence is not excessive or disproportionate.

Accordingly, the judgment of the trial court is affirmed.

A certified copy of this document shall constitute the separate opinion as to findings of the court in this case within the meaning of R.C. 2929.05(A), and the clerk of this court shall immediately make and file such certified copy with the Clerk of the Supreme Court of Ohio.

Pursuant to R.C. 2953.07, this court having affirmed the trial court and the date for execution having passed, this court sets the date of November 9, 1990 for the execution of the death sentence.

*Judgment affirmed.*

CHRISTLEY, P.J., and FORD, J., concurs.